STATE *ex rel.* SHERMAN LUBAN v. D. C. COLEMAN, Sheriff, Dade County.

189 So. 713
Division A
Opinion Filed June 9, 1939
Rehearing Denied June 24, 1939

*Walsh, Beckham & Ellis,* for Plaintiff in Error;

*George Couper Gibbs,* Attorney General, *Thomas J. Ellis,* Assistant Attorney General, and *G. A. Worley,* for Defendant in Error.

Buford, J.—The writ of error brings for review judgment in habeas corpus proceedings remanding petitioner to the custody of the respondent who held the petitioner under a judgment of contempt.

The judgment of contempt is as follows:

"The Court: It is very patent to this court that you were deliberately lying in this case, trying to protect somebody.' So long as a man tries to tell the truth I am with him, but I have the utmost contempt for a liar. You are evidently trying to protect somebody. I am going to give you thirty days in jail for contempt of court.

"Witness Lubin: May 1 say something in my defense?

"The Court: No, I have heard all I care to hear from you."

We gather from the record that petitioner was called as a witness for the State in a case wherein an information had been filed as follows:

"Robert R. Taylor, County Solicitor for the County of Dade, prosecuting for the State of Florida, in the said county under oath, information makes that Twin City Vending Co., Inc., Sam Feldman and M. D. Goldhagan of

the County of Dade and State of Florida, on the 30th day of November in the year of our Lord, one thousand nine hundred and thirty-seven, in the County and State aforesaid, did then and there unlawfully own, store, keep, possess, sell, rent, lease, let on shares, lend and give away, and permit the operation of a machine or device for use in such a way that as a result of the insertion of any piece of money, coin or other object, such machine and device was caused to operate and was operated, and by reason of an element of chance and other outcome of such operation unpredictable by the user, the user did receive and become entitled to receive a piece of money, credit, allowance, check, slug, token, memorandum and other thing of value being to the County Solicitor unknown, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Florida."

Petitioner was asked questions about conversations he had engaged in with the defendants concerning machines described in the information. He testified that he had conversations with the two named defendants and another man but that he could not say which one if either of the defendants had made certain statements to him. The record shows that such conversation as petitioner had with the defendants, or either of them, occurred more than a year before the time he was called as a witness and that he swore and maintained that he could not and did not remember which, if either, of the defendants he had a specific conversation. In other words, he said he could not say as to any specific conversations whether such conversation was with a certain one of the defendants or with the third man. He said he had conversations with all three about the machines, but could not be certain which one of them had made any specific statement to him. He was uncontradicted in the record.

It would indeed be unthinkable to hold that a trial judge may send any man to prison for contempt of court because he says he cannot remember which of three men made statements to him on some occasion more than a year in the past merely because the judge thinks he should remember. A witness should not be coerced to swear that he remembers a thing if he does not remember it.

The following is a fair sample of petitioner's testimony, for which he was held in contempt of court:

"Q. You said one of the three men talked to you about putting the machine in?

"A. That is correct.

"Q. After they put the machine in there did either one of these defendants come to you and talk to you about the machine while it was in there?

"A. One of the three did.

"Q. But which one you can't remember now?

"A. I can't.

"Q. After they put the second machine in did either one of these two men come in and talk to you about that second machine?

"A. One of the three.

"Q. After they put the third machine in did either one of these two men come in and have a discussion with you about that third machine?

"A. One of the three gentlemen, yes.

"Q. Look at them; can you point out the one you had the conversation with?

"A. I don't believe—

"Q. Go ahead and tell us what you know.

"A. All I can say is that I believe I had a conversation, and I don't know definitely which one it was with, and I am not going to sit here and lie.

"Q. No, I am sure you wouldn't do that. Are you alive or are you dead now?

"A. I think I am alive."

In 12 American Jurisprudence, page 399, we find: "Testimony which is obviously false or evasive is equivalent to a refusal to testify and is punishable as contempt, assuming that a refusal to testify would be so punishable. A noncommittal answer, however, as 'I could not say— possibly I did' is not a refusal to answer punishable as contempt, although it may subject the witness to an indictment for perjury."

And further, on page 400, it is said: "In order that perjury may constitute contempt of court, however, it must appear that (1) the alleged false answers had an obstructive effect, (2) there existed judicial knowledge of the falsity of the testimony, and (3) the question was pertinent to the issue. The filing by the defendant of a sworn answer which the court subsequently finds on consideration of the testimony of witness, to be false does not justify his punishment as for a direct contempt. Where a witness before a grand jury makes formal answers to questions propounded to him, it may be found that he is withholding the truth. Such obstruction of justice may be punishable as a contempt even if it is also perjury, where his frequent use of expressions, such as 'I don't remember' in respect of matters of which he must have some recollection, indicates a determination not to give his best recollection of facts about which he is being interrogated and shows an attitude clearly obstructive and contemptuous of judicial authority. In most of the cases in which perjury or false swearing has been held to constitute a contempt, the falseness of the statements or allegations made under oath was either admitted or so clearly shown, generally from the contemner's own statements, as to be apparently beyond question.

Where, however, the falsity of the testimony is denied and is a matter merely of inference of opinion, the court should not weigh the conflicting evidence in a contempt proceeding, but should leave the alleged contemner to be punished criminally if guilty of perjury. In other words, the contemner is entitled to a jury trial if the facts are substantially disputed, and the court cannot take judicial knowledge that the testimony or allegation is false. One who has given false testimony in a court or conducted himself in an insolent and contemptuous manner in its presence cannot purge that contempt by a written denial under oath, that it ever occurred."

In a voluminous and able opinion by Mr. Justice KEN-NISH, the Supreme Court of Missouri in the case of Creasy v. Hall, 243 Mo. 697, 148 S. W. 914, 41 L. R. A. (N. S.) 478, said:

"Going a step further, I do not agree to the opinion written, because on the admitted facts there was no contempt committed. I care not whose statement of the facts we consider. The petitioner did not fail to answer the questions propounded when he said, 'I could not say. Possibly I did. I could not say. Probably I did.' These two answers answered both questions propounded. The two questions were: 'Question 1. H. P. Creasy, did you on September 22, 1911, buy one pint of whiskey from Jimmy, the tailor that works for Harrell? Question 2. H. P. Creasy, did you on Thursday, September 21, 1911, about 6 o'clock P. M. buy one-half pint of whiskey for Tom Newby, from the negro Squire Bannister, at Tom Morris' drug store?' It may be that the answers were not truthful, but they answered the questions. If not truthful, the petitioner subjected himself to a charge of perjury, but not to a charge of contempt for refusing to answer a question. There is a marked difference between a refusal

to answer a question so as to render one guilty of contempt of court directing an answer, and untruthfully answering the question. The facts of this record may tend to show perjury, but do not show contempt based on the ground of a refusal to answer questions. Under the admitted facts, the trial judge has found contempt where none in fact exists. He has adjudged contempt where there was no contempt, and in this his judgment is void for want of power to enter the particular judgment.. The *ipsi dixit* of no court can make contempt of that which does not rise to the level of contempt. If this man has been guilty of perjury, the courts are open, but the summary process for contempt does not lie in such a case." See also Riley v. Wallace, 188 Ky. 471, 221 S. W. 1085, 11 A. L. R. 339.

In People v. Stone, 181 Ill. App. 475, it was said:

"This writ of error is brought to review proceedings for contempt of court. They were commenced by the entry of a rule requiring J. A. Stone, referred to therein as defendant, to show cause why he should not be punished for contempt of said court because, as the rule states, 'he gave false testimony while testifying after having been duly sworn in the cause entitled Joe Greenfield v. J. A. Stone.' On the day after its entry when it was returnable, a petition for such a rule was filed, sworn to by Greenfield, setting up the particular testimony claimed to be false and Stone filed his answer denying the several allegations therein as to falsity. Nothing further appears in the record except the order of the court finding the facts substantially as set forth in said petition and adjudging Stone guilty of contempt, and another order entered on the same day imposing a fine and directing his commitment until the same was paid, etc.

"If it was deemed constructive contempt, requiring a hearing to show whether the testimony was false, and one

was had for that purpose, with respect to which the record is silent, then the court practically converted itself into a tribunal to try a charge of perjury in utter disregard of the constitutional guaranties afforded one charged with crime. But presumably the court treated it as a direct contempt on the theory that it judicially knew that the testimony was false, for it entered a rule to show cause without any information or affidavit, which would be unnecessary in a case of direct contempt.

"But there is nothing in the record to disclose that the court knew that the testimony was false. In a case of direct contempt, it may act upon that of which it may take judicial notice, but it cannot judicially know that evidence is false unless at the trial it is so made to appear by the witness' own admission or perhaps by unquestioned or incontrovertible evidence. Otherwise, the court would act merely upon its belief or conclusions derived from evidence heard, and not upon matters of fact of which it had judicial cognizance, which is essential to the summary proceeding for direct contempt."

In *Ex Parte* Senior, 37 Fla. 1, 19 So. 652, it was said:

"When a person has been taken into custody under an order of a court exercising proper jurisdiction, a *habeas corpus* to discharge the person so taken involves a collateral attack on the order under which he is held and well established rules forbid an investigation into matters of mere irregularity in procedure. But illegality in matter of law or want of jurisdiction may be inquired into and the decision of the lower court, as to such matter, is not conclusive. The following language taken from People *ex rel.* Hackley v. Kelly, 24 N. Y. 74, a contempt proceeding, is expressive of our view on the subject, viz.: 'But this rule is, of course, subject to the qualification, that the conduct charged as constituting the contempt must be such that

some degree of delinquency or misbehavior can be predicated of it; for if the act be plainly indifferent or meritorious, or if it be only the assertion of the undoubted right of the party, it will not become a criminal contempt by being adjudged to be so. The question whether the alleged offender really committed the act charged, will be conclusively determined by the order or judgment of the court; and so with equivocal acts which may be culpable or innocent, according to the circumstances; but where the act is necessarily innocent or justifiable, it would be preposterous to hold it a cause of imprisonment. Hence if the refusal of Mr. Hackley, the relator, to answer the question propounded to him, was only an assertion of a right secured to every person by the Constitution, it was illegal to commit him for a contempt.' It cannot certainly be true that the decision of an inferior court adjudging a matter to be a contempt precludes all investigation as to the legality or proper authority of the court to make such order; and on the other hand, it must not be forgotten that in such matters when the court is acting within the sphere of its legitimate powers the appellate tribunal will not undertake to review the correctness of conclusions as to matters of fact or questions of mere procedure."

This is not a case of conflicting evidence. In this case the trial judge just concluded, absent any proof to be found in the record, that the witness was not speaking the truth and, without any proof to support the finding, committed the witness for contempt.

The judgment should be, and is, reversed.

So ordered.

TERRELL, C. J., and THOMAS, J., concur.

WHITFIELD, J., concurs in opinion and judgment.

Justices BROWN and CHAPMAN not participating as au-

thorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.