**STEPHEN FOSTER HOTEL v. SOUTHERN BELL TEL. CO., et al.**

Circuit Court, Dade County.
October 31, 1951.

148

Goldstein, Klein, Burris & Lehrman, Albert M. Lehrman, Miami Beach, for plaintiff.

John H. Wahl, Jr., Miami, for Southern Bell Tel. & Tel. Co.

Guyte P. McCord, Jr., Tallahassee, for the Railroad & Public Utilities Commission.

Hunt, Salley & Roman, Miami, for Sheriff Jimmy Sullivan and Sheriff Jack B. Henderson.

Mallory H. Horton, Miami, for the Attorney General.

GEORGE E. HOLT, Circuit Judge.

Plaintiff corporation is the owner of the Stephen Foster Hotel, a 66-room hostelry in Miami Beach.

On the 13th day of April, 1951, upon the sworn complaint of plaintiff denying illegal use of telephones, a temporary injunction was procured against the defendant, Southern Bell Tel. & Tel. Co., to restore telephone service to the hotel which had been disconnected without notice by the telephone company, at the request of the sheriff of Dade County (Sullivan at that time), in written form of the same date.

The sheriff assigned as his reason therefor, that on April 12, 1951, his officers arrested three men and seized horse booking equipment in room 107 on the ground floor of the hotel, and that the switchboard and other telephones were used as a part of a gambling operation.

This cause is now before the court on final hearing, and testimony of the parties and their witnesses has been taken before the court. Two questions are involved in this matter: (1) whether or not the telephone equipment was used in violation of the gambling laws of Florida, and (2) whether the telephone equipment of the hotel was used and removed contrary to the rules and regulations of the defendant, Southern Bell Tel. & Tel. Co.

From the facts and circumstances adduced before me the answer to the first question will also be sufficient to dispose of the second question.

On April 12, 1951 six deputies of the sheriff's office, armed with a warrant, descended upon plaintiff's hotel, seeking admission to room 107 thereof. This was denied them by Tom Wright, designated as superintendent of service of the establishment, and the door was broken down and entrance gained thereto.

The occupants of the room fled through a window and were apprehended several blocks from the location of the plaintiff's hostelry.

Room 107, as described by the witnesses and as disclosed by the photographs in evidence, reflected the following condition: every bit of hotel furniture had been removed therefrom, and in its place was a table ten feet long of sturdy construction upon which were located six telephones with keys and speaking apparatus, which would permit any one of six men at the table to talk over any one of six telephones. Papers and pencils were scattered on the table, and wires from the table in the room were run into a central switchbox and connected with a business phone in the business office of the hotel, no. 86-4522, as well as with two other lines, nos. 86-2509 and 86-2552, which were installed for the use of the hotel housekeeper and the superintendent of service, and were subsequently moved to room 107. In addition, telephones on the table in room 107 were connected with three keys on the main switchboard of the hotel.

A significant feature: room 107 was immediately adjacent to, and had a common wall between the manager's office and the clerk's counter, which made it all the more convenient to connect up with the switchboard and other telephones mentioned. The room was completely sound proofed by special material therefor, including the door on the inside. The door was completely covered by a steel covering with two large hasps, through which could be and were passed large pieces of material or lumber to secure it fast.

The bills for the telephones were paid by the hotel in its usual course of business. The amount of some of these were as much as three or four hundred dollars a month, with numerous collect calls from Covington, Kentucky, noticed thereon.

All of the calls were made in the afternoon and were for the months of March and April, 1951.

The tenant of the room was one E. H. Mooney, whose registration card disclosed his address as 47 Conwell Avenue, West Somerville, Massachusetts. His "check in" date was December 10, 1950; he was seen around and about the hotel just prior to the sheriff's raid on the room.

Three men were arrested and booked for operating a gambling house: Tom Wright, superintendent of service, Sam Freidland, and Max Marcus, and posted bonds in the sum of $1,500 each.

On June 4, 1951, the minutes of the criminal court of record disclosed the county solicitor announced no information would be filed as to the arrest of the three men named, and two of his assistants (Zarowny and Kehoe), stated the reason such action was taken was that they could not connect the men with the operation of room 107 because the occupants escaped before entry into the room was effected.

The president and general manager of the hotel, Louis Levy, testified he knew nothing of the operations being carried on in room 107; that although the hotel paid the very large telephone bills, it did not cause any investigation, since as a long time operator of hotels he never questioned utility bills. His secretary also testified, as did the superintendent of service (Tom Wright), both of whom denied any knowledge of the operations in the room.

The defendants failed to prove by direct testimony that any one connected with the hotel knew of the happenings in room 107. The *circumstantial evidence* produced, however — the equipment found there, the connections to the telephones, the large telephone bills, and other matters admitted in evidence — leaves no question but that the telephone equipment described was being used for illegal purposes in gambling and bookmaking.

The testimony offered by the plaintiff in some instances taxes the credulity of the most credulous, and several vital questions remained unanswered. *Query:* Who moved all of the hotel furniture and equipment out of the room? *Query:* Who moved the large table into room 107 which the testimony discloses required the strength of at least four men to lift? *Query:* Who

installed the elaborate telephone system and connected it up with the switchboard of the hotel? *Query*: Who sound proofed the room? *Query*: Who placed the steel covering over the inside of the door of room 107 and the hasps? *Query*: Who ordered maid service stopped in room 107? *Query*: Who approved payment of the large telephone bills on the telephone numbers recited? *Query*: Who failed to notice the removal of the telephones allotted to the housekeeper and the superintendent of service? These and many others remain unanswered.

There can be only one conclusion in this case. The law of the state has been violated in the use of the telephone equipment mentioned. It is the duty of this court to enforce the law —harsh as it may be.

This hotel operation is valued at $450,000. It cannot operate as a hotel without telephone service. This means closing the doors of the establishment and large financial loss to its owners and operators.

The court must leave the plaintiff where it found it—the temporary injunction will be dissolved and the bill of complaint dismissed—and being so relieved the defendant Southern Bell Tel. & Tel. Co. under the law must disconnect telephone service to this institution.

Moreover, plaintiff's witnesses have testified under oath. The court disbelieves their testimony. This court cannot be used by any one to perpetrate and perpetuate offences against the laws of this state. It must, therefore, punish the individuals who so falsely testified on behalf of plaintiff. See State v. Coleman (Fla.), 189 So. 713.

It is therefore ordered, adjudged and decreed:

1. That the temporary injunction heretofore entered herein be, and the same is hereby dissolved, and the complaint dismissed, the court retaining jurisdiction for the purpose of further proceedings in the matter of assessing in favor of the defendant Southern Bell Tel. & Tel. Co. and against the plaintiff Joan Investment Corp. the costs and damages, including reasonable attorney's fees, sustained or incurred by the telephone company on account of these proceedings.

2. That Joan Investment Corp., plaintiff herein, be, and it is hereby found guilty of obstructing the administration of

justice, and of the commission of a fraud on this court, in and by its acts in obtaining the entry of the temporary injunction heretofore entered in this cause, and in seeking to have the injunction made permanent, and it is hereby adjudged in contempt for the acts aforesaid, and sentenced to pay a fine of $1,000 to the clerk of the court forthwith; in the event of its failure so to do forthwith, that its assets be sequestered and sold for the payment of said sum in a manner and form to be determined by the court, upon proof that the sum has not been paid.

3. That Louis Levy be, and he is hereby found and adjudged guilty of obstructing the administration of justice and of the commission of a fraud on this court in and by his participation in the acts of the plaintiff corporation in obtaining the entry of the temporary injunction heretofore entered in this cause, and in seeking to have the injunction made permanent, and by his false testimony, wherefore Louis Levy is hereby adjudged in contempt for his acts aforesaid and sentenced to pay a fine of $750 to the clerk of the court forthwith, and in the event of his failure so to do forthwith, that he be taken into custody by the sheriff and confined in the county jail for a period of 30 days.

4. That Gladys Goldman be, and she is hereby found and adjudged guilty of obstructing the administration of justice and of the commission of a fraud on this court in and by her participation in the acts of the plaintiff corporation in seeking to have the temporary injunction heretofore entered herein made permanent, and by her false testimony, and Gladys Goldman is hereby sentenced to pay a fine of $500 to the clerk of the court forthwith, and in the event of her failure so to do forthwith, that she be taken into custody by the sheriff and confined in the county jail for a period of 10 days.

5. That Tom Wright be, and he is hereby found and adjudged guilty of obstructing the administration of justice and of the commission of a fraud on this court in and by his participation in the acts of the plaintiff corporation in seeking to have the temporary injunction heretofore entered herein made permanent, and by his false testimony, and Tom Wright is hereby sentenced to pay a fine of $500 to the clerk of the court forthwith, and in the event of his failure so to do forthwith, that he be taken into custody by the sheriff and confined in the county jail for a period of 10 days.