58 So.2d 683 (1952)
MITCHELL
v.
PARRISH, Sheriff.
Supreme Court of Florida, Division B.
May 9, 1952.
*684 Olen W. Cheshire, Lakeland, for appellant.
Richard W. Ervin, Atty. Gen., and William A. O'Bryan, Asst. Atty. Gen., for appellee.
MATHEWS, Justice.
The appellant in this case was found guilty of contempt by the Criminal Court of Record of Polk County for making statements under oath at the trial of the cause different from those he made under oath before the County Solicitor at a hearing held by the County Solicitor to obtain testimony upon which to base an information.
He brought habeas corpus proceedings before the Circuit Judge who remanded the prisoner to the Sheriff and discharged the writ.
This appeal is prosecuted from that order.
The record shows that at the trial of the cause in the Criminal Court of Record of Polk County in the case of State of Florida v. F.E. Longwell, charged with aggravated assault, the appellant here gave testimony which was different from that given before the County Solicitor. The testimony was material. It concerned testimony given by the appellant before the County Solicitor affecting the actions of Longwell in pulling a knife on the witness, or striking at him with a knife, and threatening to cut the witness' throat. At the trial in the Criminal Court before a jury the witness' testimony was materially different. He stated that he did not see the knife but did see Longwell put his hand in his pocket and he never took his hand out his pocket. He gave an uncompleted answer to the question, "Didn't even take his knife out where you could see it?" Answer: "No, sir, his hand in the pocket like that I seen  I know what a man going in his pocket  ."
A recording of the appellant's testimony given before the County Solicitor was read to him and he admitted that the recording was his voice and that he had so testified before the County Solicitor. The Court asked the witness, "What is the truth, that is all the Court wants to know? Did he take a knife out and swing it at you?" Answer: "No sir, he didn't never take his hand out of his pocket."
Several times during the progress of the trial the Court, as well as the County Solicitor, asked the witness to tell the truth and used such expressions as, "All we want to know is the truth."
There was another witness involved by the name of Maudie Bell Hawkins, and her testimony given at the trial was different from that which she gave before the County Solicitor. When this difference in testimony appeared, the Court held a hearing on a motion by the County Solicitor that he find these witnesses guilty of contempt and punish them. The Court then conducted an examination which was participated in by the Assistant County Solicitor and the attorney for the defendant. During the course of the hearing the following took place:
"The court: Well, it's very evident to the Court that both of you  I'm not positive which time but one time, one of these occasions, both times you were under oath, you testified as to one thing at one time, each of you, and the other time you testified entirely different.

"Mr. Wilson: They have testified today to two different statements of fact.
"The Court: They have. That's true.
"Mr. Stephenson: I think that's what gives you the authority for judging them in contempt, and it is in your *685 presence. You must be satisfied that they have lied in your presence.

"The Court: They have both admitted they made that statement and made the statement in court which is diametrically opposed to each other. As I have told both of you, that is one thing the Court cannot abide, is telling an untruth under oath.
"Maudie Bell Hawkins: May I say something? It was so long I ain't never been in nothing like this before and I have forgot. That's all.
"The Court: I find it awful hard to believe that you could forget something as important in the determination of the issues in this case as that. One time you remembered distinctly, according to you, that he pulled a knife out and made several passes at him with it and another time you don't remember he took the knife out of his pocket."
(Italics supplied.)
From the foregoing it may be true that the testimony given at the time of the trial was different from that given before the County Solicitor before the information was filed. It is also evident that the Judge of the Criminal Court was in doubt and did not determine which testimony was true. It was stated to the Court and the Court agreed that, "You must be satisfied that they have lied in your presence." The Court then stated, "* * * both admitted they made that statement and made the statement in court which is diametrically opposed to each other." The Court stated very frankly that he was not positive which time the witnesses testified falsely  whether before the County Solicitor or before the Court, but that one of these times they did testify falsely.
In the case of State ex rel. Luban v. Coleman, 138 Fla. 555, 189 So. 713, this Court cited with approval the law from 12 Am.Jur., pp. 399, 400, from the article on Contempt. In that article it is said:
"* * * In order that perjury may constitute contempt of court, however, it must appear that (1) the alleged false answers had an obstructive effect, (2) there existed judicial knowledge of the falsity of the testimony, and (3) the question was pertinent to the issue."
In this case the record falls far short of meeting the test above set forth. The trial Judge admitted in the record that he did not have judicial knowledge of the falsity of the testimony given at the trial before him. It may be true that either the testimony given before the County Solicitor or the testimony given at the trial of the case was false, but even the trial Judge could not determine which was false. It may be that the appellant was guilty of perjury, but as was said in the case of Ex parte Creasy, 243 Mo. 679, 148 S.W. 914, 921, 41 L.R.A.,N.S., 478, "If this man has been guilty of perjury, the courts are open, but the summary process for contempt does not lie in such a case." This language was quoted with approval in the case of State ex rel. Luban v. Coleman, supra.
Many cases have been cited by the appellee with reference to punishment for contempt. The case of Collier v. Baker, Sheriff, 155 Fla. 425, 20 So.2d 652, is not in point. In that case a witness refused to appear before the State Attorney before trial and testify under oath concerning facts about a homicide after the Grand Jury had investigated and returned an indictment.
The case of Ex parte Crews, 127 Fla. 381, 173 So. 275, did not concern false testimony which may have been given before a County Solicitor or a State's Attorney or even before the Court, but concerned statements and representations made by Crews to the effect that he could influence the judgment and decision of the Circuit Court and actually requested the payment of $2,400 to be delivered by him to the Judge of the Court as a bribe to corruptly influence the judgment and decision of the court. Other cases cited are where witnesses have testified in an insolent or contemptuous manner in the presence of the Court or have refused to testify or where false testimony before the Court *686 was admitted or was so apparent and obvious that the Court could only reach the one conclusion that false testimony had been given before it.
The testimony given before the County Solicitor was before the information was filed and it was not before the Court. From all that appears from this record the testimony given before the Court may have been true even though it was different from the testimony given before the County Solicitor.
Reversed with directions to set aside the order remanding the appellant and for further proceedings in accordance with this opinion.
SEBRING, C.J., and CHAPMAN and ROBERTS, JJ., concur.