HORTON, Chief Judge.
This appeal is taken from an order adjudging the appellant in contempt and sentencing him to serve a term of sixty days in the county jail. The citation or charge upon which appellant was tried and found guilty of contempt grew out of certain testimony given by him in the trial of a personal injury action. This citation contained the following:
“The above styled cause came on for trial before the Court and a Jury on October 16, 1958, and thereafter and during the course of the presentation of the plaintiff’s evidence, one Abraham Silver, said to be a doctor of medicine, was called as a witness in behalf of the plaintiff, and during the course of said testimony and specifically during cross-examination by defense counsel, was asked whether or not he had ever made application for membership in the Dade County Medical Association, to which he replied in the affirmative; that he was then asked whether he was accepted or rejected for membership, to which he replied that he was accepted and did then and there voluntarily and without specific request exhibit to interrogating counsel and the court a document purporting to evidence such alleged membership; that said document, at that time marked as defendant’s exhibit for identification, stated specifically that such association was at all times on a provisional or probational basis; that said document did not in any way evi *510 dence current or past membership in good standing with the Dade County Medical Association, and that said representation by the said Abraham Silver was with obvious intent to deceive the Court and Jury and to evade the truth. That the said Abraham Silver did also during the course of his testimony testify that his charge for the treatment of the plaintiff, Pearl Solomon, was in the amount of $2,100.-00, and further, that the said plaintiff, Pearl Solomon, did make a total of 176 visits to his office; that his charges for treatment varied from $5.00 to $10.00 per visit; giving said witness the benefit of all doubt, his' charges could not conceivably have exceeded $1,800.-00. That thereafter upon the Court’s election and without motion, the Jury was excused and the Court did then and there make direct inquiry of the witness, Abraham Silver, and upon direct and forceful inquiry of him as to whether or not he is now or ever has been a member of the Dade County Medical Association, the witness, Abraham Silver, admitted that he is not now and never has been a member of said medical association. That further and detailed inquiry was made of this witness in an attempt to ascertain whether or not there could be any reasonable justification of his alleged charge for services to the plaintiff, Pearl Solomon, and the Court could not be satisfied that the witness, Abraham Silver, had made any attempt to tell the truth, but on the contrary, had knowingly and with deceitful intent avoided the oath to which he swore upon taking the witness stand.” (Emphasis supplied.)
The record on appeal does not contain the inquiry made by the trial judge which formed the basis for the citation.
We conclude the determinative point on appeal is whether the evidence supports the judgment of contempt. Other points were raised and argued by appellant, but we do not deem it necessary to discuss them in view of our determination of the main issue.
The citation contained a two-pronged charge. The first concerned false statements that he had made application and had been accepted for membership in the Dade County Medical Association, and that he had voluntarily exhibited a card indicating membership in that association. The second accused the appellant of falsely stating his charge for medical treatment rendered in the amount of $2,100, and based upon 176 treatments varying from $5 to $10 per treatment.
At the trial of the personal injury action, the appellant, upon cross examination, testified as follows:
“Q. Doctor, did you ever make application to the Dade County Medical Association? A. Yes, sir.
“Q. Were you accepted or rejected ? A. Accepted.
“Q. Dade County Medical Association? A. Yes, sir.
“Q. When were you accepted, sir? A. Here is my card.
“Q. Sir, you are not serious about this, are you? A. I am not serious? There is my card.
“Mr. Walsh: I would like to introduce this in as evidence.
“Mr. Welsh: Have it marked for identification.
“The Court: Have it marked for identification.
“Mr. Goldworm: Do you mind if I look at it, please?
“No objection.
“(The card referred to was thereupon marked ‘Plaintiff’s Exhibit A-l for Identification.’)
“A. I was a member for 14 months.”
*511 The testimony at the hearing upon the citation reveals that the appellant had been a provisional member of the Dade County Medical Association and that provisional membership, as indicated by the document tendered by appellant at the trial, is one of seven classes of membership recognized in the by-laws of the Dade County Medical Association. The testimony shows that the accused had not been asked if he had been accepted as an active member, nor had ,he represented himself to be an active member of the association. Regardless of what may have been interpreted by his answer, the record reflects that the appellant merely claimed to have been accepted as a provisional member; that a provisional membership is recognized by the association as a class of membership and that he had been such a member.
The second charge contained in the citation grew out of the following testimony given by the appellant during the personal injury action:
“Q. That’s right. Did you determine how much the bill was for your services? A. About $2,100, I think.
“Q. (By Mr. Goldworm) Doctor, the basis of this bill, how did you determine how much your bill should amount to? A. From March 15, 1957, until October 2, 1958. That’s close to 19 months of service — 19 months of service I have seen this lady. I must have given her about— she must have had anywheres between 170 to 175 visits to the office; and I feel that 19 months of service with 175. visits, including the electrocardiographs, and my time taken — I have given her as much as an hour in my office — I feel that is a fairly reasonable bill.
“Q. Is that the drugs, the injections, everything? A. Of course, everything.
“Q. What do you usually charge for an office visit? A. Five dollars. For injections, ten dollars — with an injection, ten dollars.”
The only testimony taken at the hearing in support of the second charge in the citation for contempt was that of the appellant, whose testimony approximated the amount of the charge for services based upon 184 shots, eleven complete check-ups with mental therapy, and two electrocardiographs, all of which were administered over approximately a nineteen-month period from March 15, 1957, through October 2, 1958. There was no showing or evidence that the appellant’s statement of amount charged was false. The testimony of the appellant upon the contempt citation did show an inconsistency with his prior testimony which was that “I must have given her about — she must have had anywheres between 170 to 175 visits to the office.” In testifying to the 184 shots (visits) etc., the appellant was apparently using his office records to refresh his memory, but upon an alleged count conducted by the ap-pellee’s counsel from the doctor’s records, it was asserted that only 131 visits were recorded. The appellant attempted to explain this alleged discrepancy by saying that he had confused the number of visits with the number of shots administered to the patient, pointing out that on some occasions the patient received two injections. The appellee’s counsel in their brief here tacitly admitted that the count of 131 visits as made before the trial judge is in itself erroneous and conceded that 141 is more nearly correct.
Our review of the record leads us to conclude that the state has failed to establish the essential elements of the charges contained in the citation. It is evident that the appellant incorrectly stated the number of visits in his initial testimony in the personal injury action, and was further incorrect as to the number of visits when he testified in the contempt proceedings; nevertheless, we do not feel that false swearing or perjury can be grounded upon confusion and incorrect *512 statements alone. See State ex rel. Luban v. Coleman, 138 Fla. 555, 189 So. 713; Mitchell v. Parrish, Fla.1952, 58 So.2d 683.
Accordingly, the judgment and sentence are reversed.
Reversed.
PEARSON and CARROLL, CHAS., JJ., concur.