RAWLS, Judge.
Appellant, Albert B. Muir, III, appeals from a post judgment order of the Circuit Court of Duval County, which adjudged him in contempt of that court and sen *226 tenced him to imprisonment for a period of sixty days.
Three points are posed by appellant on this appeal, viz.: 1. The sufficiency of the evidence to support a conviction for (criminal) direct contempt. 2. The judge failed to comply with Part XVI, Florida Rules of Criminal Procedure, 33 F.S.A. 3. The post judgment proceedings, conviction and the order of commitment of sixty days in the Duval County Jail for direct contempt contravene plaintiff’s constitutional rights under the Fifth, Sixth, and § 1 of the Fourteenth Amendments to the Constitution of the United States, and §§ 2, 9 and 16, Declaration of Rights, § 3 of Article II, and § 3 of Article V, Constitution of Florida of 1968.
Applicable facts are: On May 13, 1968, Albert Muir filed a complaint for divorce to which was attached an affidavit for constructive service executed by him on May 10, 1968. Said affidavit stated: “ * * that he has made diligent search and inquiry (the details of which will be testified to at the final hearing) to discover the name and residence of the Defendant in the above entitled cause, MARY CAROL MUIR, * * * and the residence of the Defendant is: UNKNOWN TO THE PLAINTIFF.”
Testimony was taken before the trial judge on September 18, 1968, at which time Muir testified that he had resided in Clay County, Florida, for twenty-eight months, was a registered voter in said county, and a member of the United States Navy; he married the defendant in February 1958; during the duration of their marriage, his wife had left him a number of times; one child was born of the marriage which defendant contended was not his. At this hearing the following questions and answers were given:
“THE COURT: What did you do to try and locate her?
“THE WITNESS: I asked around.
“THE COURT: Where?
“THE WITNESS: Here in Florida.
“THE COURT: Her family lives in New Jersey, you were married in New Jersey, did you contact her mother?
“THE WITNESS: Several times.
“THE COURT: Did you hear from her?
“THE WITNESS: Yes sir.
“THE COURT: Was she there?
“THE WITNESS: No, sir.
“THE COURT: Did the mother say whether she knew or didn’t know where she was?
“THE WITNESS: We didn’t get along very well.
“THE COURT: She did answer your letters.
“THE WITNESS: Yes, sir.
“THE COURT: Have you ever placed a person to person call for her at her mother’s home?
“THE WITNESS : No, sir.
“THE COURT: Did her mother tell you where she was?
“THE WITNESS: She didn’t give me any indication she was there.
“THE COURT: Did she tell you she wasn’t there?
“THE WITNESS: No sir, she just didn’t tell me anything.
“THE COURT: Where else did you look for her?
“THE WITNESS : I have asked around friends I thought possibly some of her friends could have known where she was * * *
‡ * ‡ % # >K
“THE COURT: Why did she leave in April?
*227 “THE WITNESS: * * * The last time I took her back after she had been gone for a period of 14 months. I loved her and wanted to make a go of it. She was in New Jersey.
“THE COURT: With her mother?
“THE WITNESS: No, sir, in Margate in a motel. They were not at her mother’s.”
Upon the foregoing testimony, the Court concluded it had jurisdiction, and upon the testimony adduced at the hearing entered a final judgment of divorce on the next day, granting to defendant the custody of the child, and reciting: “ * * * and as this Court knows not of the whereabouts of the child nor the Defendant there is no award of alimony nor support monies to either.”
Subsequent to the entering of the final judgment of divorce, the Court received a letter dated November 25, 1968, from the defendant-wife’s New Jersey attorney suggesting that further judicial proceedings be had, and stating: “In my 35 years of practice I never saw a case where perjury was more patent than in this case.” Attached to the letter were two affidavits; one executed by defendant-wife,' and the other by her father. The wife’s affidavit recited facts denying certain incidents testified to by the plaintiff in the divorce proceedings. She further stated that her husband had not communicated with her since their last separation, but had communicated with her mother, and “ * * * he had at all times known that I was residing with my mother and father in Atlantic City, New Jersey.” The affidavit of the defendant’s father reflected that prior to the final separation plaintiff telephoned him and his wife on numerous occasions and demanded that “ * * * we take our daughter and their son, Albert B. Muir, IV, to our home in Atlantic City, New Jersey.” The affidavit further reflected: “Albert B. Muir, III, at all times has known of the whereabouts of my daughter * * * ” This affiant did not testify in the post judgment proceedings.
On November 27, 1968, a citation was issued by the trial judge to plaintiff, charging: “ * * * that you, the said Albert B. Muir, III, have apparently filed a sworn affidavit containing false allegations and have given sworn false testimony in obtaining your final judgment of divorce * * * ” and commanding him to appear before the Court on December 4, 1968, to show cause why he should not be held in contempt and why the final judgment of divorce should not be vacated.
Plaintiff and his attorney appeared before the Court on December 4, 1968, at which time the Court interrogated plaintiff at length. Upon the conclusion of this hearing, the Court made the following statements:
“We’re not going on who has grounds for divorce, now. Only whether or not he sustained grounds for desertion and whether or not he lied to this Court. At least, he played cute with it from the evidence.
3fC *****
“Here’s what I’m going to do. I’m going to continue this hearing until in January. I’m going to order you to deposit * * * [$75.00] in Domestic Relations in this Court to be forwarded to your ex-wife in Atlantic City, New Jersey to pay for her coming down here for further hearing in this matter. And you are looking twenty years in prison in the face and you had better not forget it. That is for perjury if the Court sets aside the final decree and you got a little thing of bigamy.”
The hearing was resumed on January 10, 1969, at which time the defendant-wife made a special appearance. She testified that on April 12, 1967, Muir assisted her father in loading her things into her *228 father’s car; at this time he signed an agreement to pay $70.00 per month child support; she returned to New Jersey with her father and continuously resided with her parents at their home since separating from her husband; and all communications from her husband had been made through her mother. Although the wife in her affidavit had sworn that Muir lied about several matters in his testimony at the final hearing, such as: she had left him in 1959; she had left him in the summer of 1961 and was gone for fourteen months; and other statements, the Court denied cross-examination upon this subject matter. The wife’s New Jersey attorney, who had advised the Court that he had never before seen such a patent case of perjury, testified in substance that he had communicated with Navy officials and state officials in trying to procure support money for the child, and that he had no direct contact with Plaintiff Muir.
Muir testified that on the occasion of their separation, his wife told him she was leaving; her father came and took some of her belongings; he (Muir) was not there when they left; he communicated with his wife’s mother, but never with his wife. Muir was asked by his attorney if he had any previous knowledge about his wife’s whereabouts, and his answer was: “There is a reason for this.” When asked, “Why?”, Muir stated: “Because in March 1967 she had taken off for a period of two —a few days.” Upon sustaining an objection, the Court stated: “We are restricting the testimony as to what to do after April 12, 1967, which is the date alleged in the complaint for desertion and the date we’re offering for service of process.” Muir again testified that he did not know his wife was living with her parents and had listed her address as “Unknown” on his income tax return. At the close of this proceeding, the Court entered its order holding plaintiff in direct contempt and sentencing him to sixty days in jail.[1]
Plaintiff moved for a rehearing or a new trial, which motion was heard on March 11, 1969. Material excerpts of argument by counsel and statements by the Court at that proceeding are:
(Plaintiff’s counsel)
“In connection with the elements of diligent search and inquiry resulting in the supporting service and based on that, you determined you had jurisdiction and granted a judgment of divorce.
“There is nothing in any subsequent testimony by Mr. Muir that contradicts either his affidavit or his testimony at the final hearing in September of ’68.
(The Court)
“The Court will concede there was no admission by him.
^ ‡ ‡ ^
“I have agreed with you technically, he has made no false statements.
[[Image here]]
(Defendant’s counsel)
“ * * * I think the man’s answers were crafty and were suspicious and further indicated he was understanding and he gave answers that he chose which he felt the Court would approve and that is the way he answered any particular question that came to him.
“He gave this appearance and clearly would leave one to believe by the whole testimony given at the final hearing and certainly at the three that he made an inquiry and he had tried to locate his wife.
“He indicated he talked to her folks trying to determine where she was *229 located. Throughout, he indicated he did not have any knowledge as to where she was either before or after by reason of the fact he had, in fact, been trying to keep up with her.
i|í ifC ‡ 5fc Jji ‡
(The Court)
“The Court, in the Court’s opinion, gave the man ample opportunity to purge himself of that contempt and failing to do that, therefore, your motion is denied.”
Plaintiff’s motion for an order setting aside the order entered January 10, 1969, and for rehearing, was denied.
Direct criminal contempt proceedings, terminating in a penal sentence, may be conducted by a judge without a jury, without violating the constitutional right to a trial by jury.[2]
In this nation of free people it is the rightful concept of our citizens that one shall not be imprisoned in jail until and unless a jury of his peers has found him guilty. This concept of criminal justice must be weighed on the scales of justice against the concept of the inherent right of the judiciary to vindicate the court’s authority and maintain it dignity. The cases are legend which hold that the power to punish for contempt should be cautiously and sparingly exercised.[3]
In South Dade Farms, Inc. v. Peters[4] Mr. Justice Thornal quoted from pages 17 and 18 of Oswald, Contempt of Court, as follows:
“ ‘It should always be borne in mind in considering and dealing with contempt of Court that it is an offense purely sui generis, and that its punishment involves in most cases an exceptional interference with the liberty of the subject, and that, too, a method or process which would in no other case be permissible, or even tolerated. It is highly necessary, therefore, in all questions of this nature where the functions of the Court have to be exercised in a summary manner, that the Judge in dealing with the alleged offense should not proceed otherwise than with great caution and deliberation, and only in cases where the administration of justice would be hampered by the delay in proceeding in the ordinary course of law; and that when any antecedent process has to be put in motion, every prescribed step and rule, however technical, should be carefully taken, observed, and insisted upon. The jurisdiction should be exercised the more carefully in view of the fact that the defendant is usually reduced, or pretends to be reduced, to such a state of humility, in fear of more severe consequences if he shows any recalcitrancy, that he is either unable or unwilling to defend himself as he otherwise might have done.’ (Emphasis ours.)”
Mr. Justice Terrell, in his dissent in Neering v. State,[5] set forth guidelines which are most helpful in cases such as the instant one when he stated:
“The imposition of a judgment for contempt is one of the most delicate duties a court is called on to perform. It is not fixed by statute but is controlled by mercy and discretion and the facts of the case. It should be corrective, not punitive, and it should be made clear that it is not imposed for committing a crime but for interfering with the essential and orderly processes of the law.”
Ordinarily a contemner is entitled to a jury trial if the facts are substantially *230 disputed.[6] The record in the instant case reflects considerable dispute as to the facts, and a complete absence of competent testimony to sustain the New Jersey lawyer’s observation at the outset that “patent perjury” was indulged in by plaintiff.
The primary question posed by this record goes to the sufficiency of the evidence to sustain the conviction of contempt of court. The overall import of the proceedings reflect a lack of candor and good faith on the part of Muir with the Court. By his affidavit he swore that he had made diligent search and inquiry, but his affidavit plainly stated that he would testify as to the details of the diligent search and inquiry at the final hearing. His testimony as a whole reveals without question that he did not pursue such diligent inquiry as is requisite to establish jurisdiction of the Court through the means of a constructive service of process. However, he did not swear falsely. The trial court must shoulder some of the responsibility, for even though plaintiff failed to respond to critical questions, the Court concluded it had jurisdiction and proceeded to the merits of the cause. In the absence of false swearing by Plaintiff Muir in Court, can it be said that he demonstrated that degree of contemptuous attitude as to require imprisonment to vindicate the Court’s authority and maintain its dignity? In view of the Court’s observation during the contempt proceedings : “I have agreed with you technically, he [plaintiff] has made no false statements”, we conclude that Muir’s conduct was not of such character. However, the evidence does amply support a technical contempt.
The judgment of contempt is affirmed. The sentence of imprisonment is set aside with directions to discharge the defendant.[7]
Affirmed in part, reversed in part.
JOHNSON, C. J., CARROLL, DONALD K., J., concur.

. Supersedeas was granted on motion the following day.

. Gompers v. United States, 233 U.S. 604, 34 S.Ct. 693, 58 L.Ed. 1115.

. Geary v. State, 139 So.2d 891 (Fla.App. 3d 1962), and citations therein.

. South Dade Farms v. Peters, 88 So.2d 891, 898 (Fla.1956).

. Neering v. State, 155 So.2d 874, 879 (Fla.1963).

. State ex rel. Luban v. Coleman, 138 Fla. 555, 189 So. 713 (1939).

. See Neering v. State, 141 So.2d 615 (Fla.App.1st 1962); certiorari discharged 155 So.2d 874 (Fla.1963).