DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JORGE RAMOS,**
Appellant,

v.

**NORTH STAR ENTERTAINMENT FIRM, LLC,** and
**1101 S. FEDERAL HIGHWAY, LLC,**
Appellees.

No. 4D19-675

[April 29, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Carlos A. Rodriguez, Judge; L.T. Case No. CACE 18-27239 (14).

Michael B. Manes of Michael B. Manes, P.A., Plantation, for appellant.

John P. Seiler and Richard J. Zaden of Seiler Sautter Zaden Rimes & Wahlbrink Fort Lauderdale, for appellee North Star Entertainment Firm LLC.

WARNER, J.

Appellant Jorge Ramos appeals the trial court's order of direct criminal contempt and a sentence of sixty days in jail, based upon the court's finding that Ramos, a witness in a proceeding, had committed perjury. Because the court weighed conflicting evidence, as well as relied on out-of-court evidence, and the appellant never admitted the falsity of the statements, the court erred in finding Ramos in direct criminal contempt. We reverse.

This case arises out of a landlord tenant dispute between North Star Entertainment Firm, LLC and 1101 S. Federal Highway, LLC (Landlord). North Star claims to be the rightful tenant to Landlord's property pursuant to a commercial property lease agreement. Ramos was a witness at a temporary injunction hearing regarding their dispute. He was a former owner/manager of North Star and current owner of the entity Crew Today, LLC. In 2016, an original lease was entered into between Crew Today, LLC, and Landlord. Pursuant to the lease, Landlord allowed Crew Today,

LLC to use its liquor license. Ramos then created North Star to operate a disco on the leased property. After North Star was created, Ramos and Landlord proceeded to transfer the liquor license to North Star in a questionable manner.

In 2017, Ramos ran into financial trouble. As a result, Ramos involved Mr. Raphael Baruch (Baruch) in North Star with a split in the profits and the business. This split is the subject of a verbal dispute between Ramos and Baruch. According to North Star's K-1 tax forms from 2017, and the agreements between Baruch and Ramos, Baruch ultimately acquired approximately sixty percent of North Star from Ramos. Later, Baruch and Ramos had a falling out and Baruch terminated Ramos as manager of North Star. Thereafter, Ramos became the manager for Landlord. Ramos terminated the lease between Crew Today, LLC and Landlord. Landlord then brought a separate eviction action against Crew Today, LLC. North Star sued Landlord for breach of contract, fraud, misrepresentation, unjust enrichment, and quantum merit. North Star sought emergency relief from the trial court regarding the eviction through a verified motion for a temporary injunction and to inspect and preserve property.

At the temporary injunction hearing, Ramos at one point testified regarding questionable documents he submitted to the Florida Department of Business and Professional Regulation (DBPR) to obtain a liquor license. The court raised its concern that Ramos' testimony was perjured. Ramos' attorney, who was present, apprised the court that in light of its concern he would direct Ramos to "take the Fifth." The trial court responded that the documents were signed by Ramos under oath and submitted to the DBPR. The court asked Ramos' attorney why Ramos should not be held in direct criminal contempt because of documents Ramos submitted to the DBPR. A discussion ensued and the court decided to defer ruling on the contempt until he reviewed the transcript. The hearing continued.

At the conclusion of Ramos' testimony, the court advised Ramos that he was holding him in direct criminal contempt and addressed the reasons for the ruling. The court asked if Ramos had grounds why he should not be held in contempt. Ramos' attorney argued against the reasons given by the trial judge. The court stated that it would hold Ramos in direct criminal contempt. Ramos' attorney argued that other evidence would show that Ramos was not lying. The court stated that it would defer ruling on sentencing to allow for mitigation evidence to be presented.

On the next day, the trial court issued the order adjudicating Ramos guilty of direct criminal contempt. Then the following day, the trial court

held a hearing allowing Ramos to present excusing or mitigating circumstances for his sentence per the order. The court then sentenced him to sixty days in jail. Ramos appeals the court's judgment and sentence.

Preliminarily, we note that the trial court erred in its procedure for holding Ramos in direct criminal contempt. Florida Rule of Criminal Procedure 3.830, governing direct criminal contempt proceedings, requires that:

> Prior to the adjudication of guilt the judge shall inform the defendant of the accusation against the defendant and inquire as to whether the defendant has any cause to show why he or she should not be adjudged guilty of contempt by the court and sentenced therefor. The defendant shall be given the opportunity to present evidence of excusing or mitigating circumstances.

"The provisions of rule 3.830 define the essence of due process in criminal contempt proceedings and must be scrupulously followed." *Hutcheson v. State*, 903 So. 2d 1060, 1062 (Fla. 5th DCA 2005) (citations omitted). In *Hutcheson*, the defendant was confronted with his allegedly perjurious statement but was cut off by the trial court before he could give an explanation. The court held that the trial court did not meet the procedural due process requirements of the rule. "Where a claim of false or perjured testimony is involved, the accused must, *prior to the adjudication of guilt*, be given an opportunity to present evidence of excusing or mitigating circumstances." *Id.* (citations omitted) (emphasis added). *See also Peters v. State*, 626 So. 2d 1048 (Fla 4th DCA 1993).

Because the trial court did not provide an opportunity for Ramos to present the evidence of explanation prior to finding him in contempt, the court failed to strictly follow the procedures of the rule and that failure would independently necessitate a reversal. However, as the findings of the trial court did not support direct criminal contempt, we review the merits of the judgment.

The standard of review of a direct criminal contempt conviction is abuse of discretion. *Michaels v. Loftus*, 139 So. 3d 324, 327 (Fla. 3d DCA 2014). "While a judgment of direct contempt is entitled to a presumption of correctness, it must be supported by the record." *Smith v. State*, 954 So. 2d 1191, 1194 (Fla. 3d DCA 2007) (citations omitted). "The contempt power should always be exercised with judicial restraint." *Emanuel v. State*, 601 So. 2d 1273, 1274 (Fla. 4th DCA 1992).

3

"In order to be considered direct criminal contempt, all of the acts underlying the contemptuous conduct must be committed in open court in the presence of the judge, 'where all of the essential elements of the misconduct are under the eye of the court [and] are actually observed by the court.'" *Plank v. State*, 190 So. 3d 594, 606 (Fla. 2016) (citing *In re Oliver*, 333 U.S. 257, 275 (1948)). If the judge relies on statements and testimony from others regarding their knowledge about the contemptuous acts, then the misconduct is no longer considered direct criminal contempt. *Id.* "'[T]he judge must have personal knowledge of [the misconduct] acquired by his own observation of the contemptuous conduct.'" *Id.* (citing *In re Oliver*, 333 U.S. at 275).

In *State ex rel. Luban v. Coleman*, 189 So. 713, 714 (1939), the supreme court held that in order for perjury to constitute contempt of court, "it must appear that (1) the alleged false answers had an obstructive effect, (2) there existed judicial knowledge of the falsity of the testimony, and (3) the question was pertinent to the issue." The supreme court further explained that:

> In most of the cases in which perjury or false swearing has been held to constitute a contempt, the falseness of the statements or allegations made under oath was either admitted or so clearly shown, generally from the contemner's own statements, as to be apparently beyond question. **Where, however, the falsity of the testimony is denied and is a matter merely of inference of opinion, the court should not weigh the conflicting evidence in a contempt proceeding, but should leave the alleged contemner to be punished criminally if guilty of perjury.** In other words, the contemner is entitled to a jury trial if the facts are substantially disputed, and the court cannot take judicial knowledge that the testimony or allegation is false.

*Id.* at 715. (Emphasis added.)

In *Emanuel v. State*, 601 So. 2d 1273, 1275 (Fla. 4th DCA 1992), we addressed direct criminal contempt based upon perjury and concluded that unless it was admitted, it could not be punished through contempt. The defendant, at a suppression hearing, testified contrary to the testimony of two state witnesses and claimed that he did not consent to a search while the other witnesses said that he did. Upon review of the trial court's order finding the defendant in direct criminal contempt for committing perjury, this court determined that the trial court erred. *Id.*

4

The strict standard of proof necessary to establish judicial knowledge of the falsity of the testimony is "satisfied *only* where the witness admits the falsity or other circumstances demonstrate beyond question the false nature of testimony." *Id.* at 1275. (Emphasis added.) Because of due process concerns, this court stated that "in the ordinary situation where perjury is suspected, a state prosecution for perjury is the preferred alternative." *Id.* at 1275. We recognized that it is the trial judge's responsibility to judge credibility and decide factual disputes. But "[t]his responsibility should rarely be mixed with the authority to find a party in contempt for false testimony . . . . Under *Coleman,* contempt should be reserved only for the most blatant cases in which the perjury is virtually undisputed." *Id.* at 1275 (referring to *Coleman,* 189 So. at 714).

The trial court found four allegedly false statements to support the finding of contempt. None of them constitute a direct admission of the falsity of testimony. The first instance of perjury found by the trial court was Ramos' testimony, twice, that he had not seen a 2017 tax return and the attached K-1 tax form, which showed that he owned less than 100% of the partnership between Baruch and him in creating North Star. And, then, "after being confronted with the cover letter to him, the K-1 and the fact his accountant niece prepared the return," Ramos changed his testimony and said that he had seen the return. According to his accountant, who was also his niece, she sent out a K-1 showing the 100% interest and then sent out a revised K-1 showing that he had only a 42% interest. Ramos testified that he did not look at the second K-1 when it was sent, and had only seen the K-1 which showed 100% interest. Applying *Coleman* and *Emanuel,* it is clear that Ramos did not admit the falsity of any statement. He explained that he had failed to read various tax documents. His niece, his accountant, testified she emailed him the documents. The court clearly did not believe his testimony that he did not read the documents and weighed his testimony against that of the niece, contrary to the dictates of *Emanuel.* This is not one of those cases where the false statement is "virtually undisputed." Here its falsity was very much disputed.

The second reason the court found Ramos in contempt, as stated in the order, was:

> The relevance of the return was that Ramos had testified in the hearing under oath that [Baruch] owned forty percent of Plaintiff LLC yet the return showed him to own 57.3699%. The December 24, 2017, Supplemental Purchase Agreement and the November 15, 2017, Membership Interest Purchase Agreement [Defendant's Composite Exhibit 4] also showed

5

50%, plus 10% for a total of 60% ownership. Both documents signed and ultimately acknowledged by the witness showed his earlier testimony to be a lie.

The trial court determined that Ramos lied based on the K-1 and the Supplemental Purchase Agreement, and the Membership Interest Purchase Agreement. In order to arrive at the conclusion that Ramos committed perjury, the trial court had to weigh Ramos' testimony regarding the K-1. Also, the court had to consider the agreements between Ramos and Baruch regarding the ownership of North Star. These agreements were created outside the presence of the court and the subject of dispute between the parties.

In *Fiore v. Athineos*, 9 So. 3d 1291 (Fla. 4th DCA 2009), we considered a trial court's finding that a mother was in direct criminal contempt in a paternity and dependency action. The mother had failed to execute and return the children's completed passport applications to the father. We concluded that the conduct concerning the contempt occurred outside the "actual presence of the court" as required by Florida Rule of Criminal Procedure 3.830; thus, it was not direct criminal contempt. *Id.* at 1292. Using the United States Supreme Court as our guide, we stated that typically direct criminal contempt:

> includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where *all of the essential elements of the misconduct are under the eye of the court,* are actually observed by the court, and where immediate punishment is essential to prevent "demoralization of the court's authority before the public."

*Id.* at 1293 (citing *In re Oliver*, 333 U.S. 257, 275 (1948)). (Emphasis added.) Accordingly, we reversed the order finding the mother in direct criminal contempt. *Id.* at 1293.

Here, to conclude that Ramos committed perjury, the court considered the testimony of the niece regarding the preparation of the documents, when and to whom they were sent, and the analysis of the agreements between the parties. As the documents on which the trial court relied in its conclusion were created out of the court's presence, and Ramos did not admit that his testimony based on those documents was false, the court erred in finding him in direct criminal contempt on these grounds.

The trial court found that Ramos' submission of fraudulent documents to the DBPR for a liquor license was a third incident of perjury which

warranted a finding of direct criminal contempt. The court found that Ramos admitted signing the documents, but as Ramos' counsel aptly noted, if Ramos had lied on the form it was an act committed months before the trial and would not be direct criminal contempt.

In *Pugliese v. Pugliese*, 347 So. 2d 422, 426 (Fla. 1977), the court addressed the issue of criminal contempt for failure to comply with an order. The petitioner in that case had admitted in the presence of the trial court that he had defied the terms of the judgment. The respondent argued on appeal that the trial judge then "heard the conduct" constituting the contempt in the actual presence of the court. *Id.* at 426. The supreme court resolved:

> Were this contention accepted, the distinction between direct and indirect criminal contempt would be obliterated because the judge must always hear some testimony in his presence at a hearing on indirect contempt concerning conduct which took place outside his presence. We reject any such notion that would expunge the distinction between direct and indirect contempt.

*Id.* at 426. The court concluded that the conduct in question—the violation of the trial court's order—took place outside the presence of the judge, and thus did not constitute a direct criminal contempt. Similarly, in this case, the false statement to the DBPR took place outside the presence of the court and cannot be the basis of a direct criminal contempt.[1]

The fourth instance of contemptuous conduct which the trial court found was that Ramos "swore to [DBPR] to obtain the [liquor] license for North Star, knew that the license belonged to North Star, knew that DBPR's records showed the license belonged to North Star yet testified to the Court under oath that the license was owned by [Landlord]." To the extent the trial court relied on Ramos' statements in the application to DBPR, it based its finding of direct criminal contempt on matters occurring outside the court's presence. To the extent the court relied on Ramos' contrary statement of ownership at trial, Ramos argues that his belief that the liquor license was owned by Landlord was not perjury but a belief the liquor license was tied to the address owned by Landlord. Ramos also argues that the issue of "ownership" of the license involved a legal opinion

---

[1] We also note that the court admitted that the issue of the liquor license was not relevant to the proceedings at issue. Thus, it did not meet the test of *Coleman* that the false statement be pertinent to the issue before the court.

which Ramos was unable to make, and as a result the trial judge was not able to satisfy the requirement of "judicial knowledge." In *Coleman*, the supreme court noted that where the falsity of the statement depends on a matter of opinion, courts should leave the contemnor to be punished for perjury and not direct contempt. 189 So. at 715. Based on *Coleman*, this statement of ownership of the liquor license should not have been punished by direct contempt.

In all of the instances that the trial court found contemptuous conduct, it abused its discretion in finding Ramos in direct criminal contempt. As this court stated in *Emanuel*, "in the ordinary situation where perjury is suspected, a state prosecution for perjury is the preferred alternative." 601 So. 2d at 1275.

*Reversed and remanded to vacate the judgment and sentence for direct criminal contempt.*

KLINGENSMITH and KUNTZ, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

8