## TURK AND WALLEN *v.* STATE.

### Opinion delivered April 3, 1916.

1. CONTEMPT—PUNISHMENT FOR—POWER OF COURTS.—The power of
   punishment for contempt is inherent in courts of justice and the
   right to inflict punishment upon an offender against their dignity
   and authorty is an incident of judicial power which can not be
   removed by statutory enactment.

2. CONTEMPT—NOTICE TO ACCUSED.—A written charge made by the
   circuit court upon its record, of which the accused were notified
   and given an opportunity to answer, charging them with con-
   tempt of court, *held*, sufficient to give the court jurisdiction.

3. CONTEMPT—PREVENTING A PARTY LITIGANT FROM ATTENDING COURT—
   PUNISHMENT.—Defendants by threats prevented one A. from ap-
   pearing in the circuit court to prosecute a case in which he was
   plaintiff; *held*, the defendants could properly be prosecuted for
   contempt of court; and that a judgment assessing their punishment
   at fines of $500 and $250 and ninety and forty-five days imprison-
   ment respectively, was within the jurisdiction of the court.

Certiorari to Cross Circuit Court, First Division;
*W. J. Driver,* Judge; affirmed.

### STATEMENT BY THE COURT.

Appellants bring this proceeding to review the ac-
tion of the circuit court in adjudging them guilty of con-

tempt and assessing their punishment at a fine and imprisonment in the county jail.

The circuit court entered of record on the 24th day of February, 1915, the following charge:

"On this day it being made to appear to the court from the consideration of evidence that on a former day of this term, towit: On the 8th day of said term, the above entitled cause was set for trial; that the plaintiff appeared in person on the forenoon of said day for the purpose of prosecuting his cause of action; that before reaching the courthouse in the City of Wynne, he was accosted by one Bob Turk in the interest of the defendant, and thereafter was accosted by the defendants in person; that threats were made by said parties against plaintiff, and he was placed under fear and was intimidated from appearing in said court and prosecuting said action; and was, through said means and agencies, and through fear and intimidation, induced to leave said City of Wynne, which caused a nonsuit to be entered in the action herein."

It directed a citation to issue against said parties requiring them to appear and answer the charge of contempt "in so placing said J. L. Andrews under fear and intimidating him and preventing him from being and appearing in this court and prosecuting his cause of action aforesaid. The citations did not contain a recital of the purpose for which the parties were required to appear, but no objection was made thereto on that account.

Testimony was introduced from which it appears that J. L. Andrews and Luther Wallen one of the defendlants had a fight on the streets of Earle as a result of which Andrews filed a suit for damages against Wallen in the Cross County circuit court which was set for trial on November 8, 1915. Shortly after the fight Wallen made a statement to Jake Bryan, a mutual friend of the parties, that "if Andrews sued him he would never sue anybody else," which threat was communicated to Andrews. On the day set for the trial, while Andrews the plaintiff was proceeding to the courthouse at Wynne, he was accosted by Bob Turk, the marshal of the town of

Earle and deputy sheriff of Crittenden County, who desired to speak to him. They went some distance from the courthouse and Turk asked to know if the law suit could not be stopped, telling Andrews that he was a friend of both parties. Andrews replied that it had gone too far and he knew no way in which it could be stopped. Turk then insisted that he talk to Wallen about the matter and called him. Wallen inquired if the suit could not be kept from coming to trial, and Andrews said he did not think so, it had gone too far, whereupon Wallen replied in a threatening manner: "It is like this, I am not going to tell you what I am going to do, but I am going to do it, if you do not stop this trial." Andrews said he could not stop it and Wallen said: "You can stop it, you can stop it by catching the first train out of here and that is what you had better do." Andrews finally said: "Well, if I have got to do it, I guess I can, and they started towards the station going by the livery stable and Andrews suggested that there was no train he could get out on, but Turk who had again joined them said: "There is the Hot Springs Special, you can get out on that" and upon his suggestion that the train did not stop at Kensett, Turk replied, "Yes it does." Wallen and Turk had stepped aside at the livery stable and talked together, then all proceeded to the depot. Andrews was in such a hurry to take the train that he attempted to get on without a ticket. After he got on the train Turk handed him a small package, which was afterwards discovered to contain three $5 bills. Andrews went to Kensett and from there to Heber Springs, where he talked to his attorney over the phone who told him to come on back to court, which he did, after he was assured that protection would be given him.

Appellants denied having used any threats or intimidation to prevent the appearance of Andrews in court and the further prosecution of his suit and stated that he agreed to settle and dismiss the suit upon the payment of $15, which he said he had already paid out as part of an attorney's fee, and it was paid him accordingly.

The court found appellants guilty and assessed a fine of $500 and imprisonment for ninety days against Bob Turk and a fine of $250 and forty-five days imprisonment against Wallen.

*J. C. Brookfield* and *L. C. Going,* for appellant, petitioners.

1.  The court had no jurisdiction to punish for contempt, the petitioners. No affidavit nor information was filed. 89 Ark. 73; 46 Kans. 613; 26 Pac. 937; 81 *Id.* 409; 82 *Id.* 583; 65 Ind. 508; 45 N. Y. 116; 10 S. C. 38; 145 S. W. (Tex.) 911; 221 U. S. 448.

2.  The punishment is in excess of the court's authority. The offense was not committed in the presence of the court. Art. 7, § 26, Const.; Kirby's Digest, § 721.

3.  The alleged contempt was civil and no affidavit was filed. Authorities *supra.* The judgment was void; the punishment was excessive; the judgment should be quashed upon *certiorari.*

*Wallace Davis,* Attorney General, *Hamilton Moses,* Assistant, for appellee.

1.  Appellants rely upon 89 Ark. 76. That was a civil contempt case and is covered by section 3989, Kirby's Digest. It does not apply here. The court had jurisdiction to punish. 14 Ark. 538; 46 *Id.* 384; 69 *Id.* 550. The crime was in disobedience of process. Const. Art. 7, § 27; 102 Ark. 127. This was a criminal contempt. 114 Ill. App. 323; 117 Fed. 448; 150 U. S. 637; 20 Wall. 387; Hughes Crim. Law & Proc, § 1673; 128 Minn. 153; 221 U. S. 448; Wells on Jurisdiction, § 179; Oswald on Contempt, 36; Rapalje on Contempt, § 21 and 30, other citations.

2.  The procedure here was clearly statutory. Kirby's Digest, § 722-3; 49 N. J. L. 115. As to the power of courts to punish for both direct and constructive contempts in a summary manner, see 36 Miss. 331; 63 N. C. 404; 55 N. H. 355; 37 Ind. 454; 24 W. Va. 473; 102 Ark. 129; 27 How. Pr. 14; 172 Mass. 294; 64 Ill. 195; 102 Ark. 127.

3.  The intimidation of a witness is a grave criminal contempt.  137 N. C. 553; 47 Md. 528; 46 Ind. 298; 37 Pa. 83; 11 Oh. 681; 14 N. C. 653; 36 Ind. 196; 71 Fed. 943; 36 Pac. 633; 47 Ind. 528; Wharton Cr. Law (8 ed.), § 894; *Ib.,* § 1333; Hughes, Cr. Law, § 1701; Bishop New Cr. Law, § 258; 131 U. S. 267, and many others.

4.  The punishment was not excessive.  99 Ark. 162; 69 *Id.* 550; 99 *Id.* 163; 172 S. W. 763; 97 *Id.* 427; 85 Cal. 600; 137 Pac. 121; 102 Fed. 473; 102 N. W. 883; 51 L. R. A. 373; 58 Mich. 337; 83 Ala. 55.

. KIRBY, J., (after stating the facts).  Appellants contend that the court was without jurisdiction to punish them for contempt and that the amount of the fine and imprisonment assessed against them was beyond its authority.  They insist that the filing of an affidavit or information containing the charge of contempt was necessary to give the court jurisdiction thereof, within the doctrine announced in *York* v. *State,* 89 Ark. 76.

. (1-2)  The written charge made by the court upon its record of which the appellants were notified and given an opportunity to answer, was sufficient to give the court jurisdiction of the offense.  *CarlLee* v. *State,* 102 Ark. 122; *Dickerson* v. *State,* 179 S. W. 324, 120 Ark. 9.

The power of punishment for contempt is inherent in courts of justice and the right to inflict punishment upon an offender against their dignity and authority is an immemorial incident of judicial power which can not be removed by statutory enactment.  *Cossart* v. *State,* 14 Ark. 538; *State* v. *Morrill,* 16 Ark. 384; *Ford* v. *State,* 69 Ark. 550.

Our Constitution provides, "The General Assembly shall have power to regulate, by law, the punishment of contempts not committed in the presence or hearing of the courts or in disobedience to process." Section 26, article 7. Const. 1874.

Our law provides that punishment for certain contempts may be by fine or imprisonment in the jail of the

county, where the court may be sitting, or both, in the discretion of the court; but the fine shall in no case exceed $50, nor the imprisonment ten days.   Section 721, Kirby's Digest.

Appellants insist that the offense with which they are charged was not committed in the presence or hearing of the court and was not in disobedience of any process of the court and that its power to punish was exceeded in the fine and imprisonment assessed.

"Criminal contempts are all acts committed against the majesty of the law, or against the court as an agency of government and in which, therefore, the State and the whole people are concerned." Thomas on Constructive Contempt, 203; Oswald's Contempt, 36; *Powers* v. *People,* 114 Ill. App. 323; *In re Swan,* 150 U. S. 637; *CarlLee* v. *State, supra.*

Another writer says "Criminal contempts are all acts in disrespect of the court or its process or which obstruct the administration of justice or tend to bring the court into disrepute." Rapalje on Contempt, section 21; *State* v. *Shepherd,* 177 Mo. 205; *Eaton Rapids* v. *Horner,* 126 Mich. 52.

It is universally held that intimidating a witness and preventing his appearance at court or procuring him to absent himself from the trial, is a contempt of court. Preventing the appearance of a litigant in court, for the prosecution of a suit brought to enforce a right, by intimidation and threats, is such an obstruction of judicial procedure as renders absolutely worthless all process of the court, which is instituted for the enforcement and protection of the rights and the redress and prevention of wrongs of the litigants.   It destroys the dignity and power of the court and brings the administration of justice into disrepute.

Here a citizen appealed to the court for the redress of an alleged wrong only to find himself confronted by the wrong doer and his associate on the day set for the trial, at the door of the court, and so intimidated with threats, that he found it necessary to absent himself from

the court of justice to which he had appealed, and abandon the prosecution of his cause of action through fear.

The conduct of appellants was a flagrant offense against the dignity and power of the court, whose arm is long enough and strong enough to keep open and unobstructed the way to its door to all who must invoke its authority, which is not limited in the right to punish offenses of this kind except by the infliction of such punishment as is commensurate with the enormity of the offense and calculated to preserve and uphold the dignity and honor of the court and its respect in the confidence of the people. *Ford* v. *State*, 69 Ark. 550. The court had jurisdiction to hear the proceeding and did not exceed its authority in the assessment of the punishment.

The judgment is affirmed.