SONGER *v.* STATE.

5064                                    364 S. W. 2d 155

Opinion delivered January 28, 1963.

*Terral, Rawlings & Matthews,* for petitioner.

*Frances Holtzendorff,* for respondent.

PAUL WARD, Associate Justice. On June 12, 1962 petitioner was judged in contempt of court and fined for disobeying an order of the court pertaining to the custody of Chris Songer, a nine year old son of the petitioner. He now brings before us, by certiorari, the record of the contempt proceedings, seeking to have the order of contempt quashed.

Since many relevant facts and circumstances are set out in *Songer* v. *Songer,* 229 Ark. 228, 314 S. W. 2d 233 (opinion June 16, 1958) we deem it sufficient for this opinion to set out below a brief summary of the testimony contained in the record which preceded and led up to the contempt order.

The petitioner and his former wife were divorced in 1956; they had five children at the time; the two older ones are married and they both appear to be bitter toward their father at this time; one boy, Larry, now 14, is living with his father (the petitioner) and is not involved here; the youngest child is living with her mother and is not involved; Chris is now nine years old, and an incident over his custody precipitated this litigation. Petitioner has married again, and Mrs. Songer is now married to a Mr. Halcumb. The parties have been in court almost continuously over the custody of the children.

Following the directive in our decision referred to above, the trial court gave petitioner custody of Chris.

with his mother having the right to have him from Friday to Sunday each two weeks. The record discloses that Chris' visits to his mother were a constant source of trouble. It seems that Chris' father and mother each thought the other was mistreating him, and each vied for his company and affection.

On June 12, 1962 the trial court (apparently at the request of both parties) entered of record an order, the pertinent part of which reads:

"That the plaintiff (Mrs. Halcumb) shall have the right to pick up the parties' minor son, Christopher Songer, at noon on June 15, 1962, and to take said minor child on a trip with her out west, and shall return the said child to the home of the defendant by 5:00 p.m. on July 1, 1962."

When Mrs. Halcumb went by Mr. Songer's home at the designated hour to pick up Chris, preparatory to making the trip out west, she was unable to get him to go with her. Mrs. Halcumb, thinking that Mr. Songer had contrived to disobey the court's order, had him cited for contempt. A hearing was had at which testimony was given by many witnesses, including all the members of the family (except Chris) referred to above. At the conclusion the trial court found: "That the defendant, Herschel Lee Songer, is in contempt of court for violation and disobedience of the order of this court on June 12, 1962." Then the court assessed a fine of $50 against the petitioner and sentenced him to three days in jail, but the jail sentence and $40 of the fine were suspended "pending the future good behavior and cooperation of the defendant with the court and the plaintiff regarding plaintiff's visitation privileges . . . "

It is our conclusion, after careful consideration, that the order of the trial court should be sustained. Under our view of the case it is unnecessary to review all the evidence because we think the petitioner has a misconception of the applicable law. It is his contention that he was fined on a charge of criminal contempt of court, and that, therefore, we must find the evidence shows him

guilty beyond a reasonable doubt, or reverse the trial court. We are not in agreement with this contention for reasons set out hereafter.

The distinction between civil and criminal contempt proceedings is clearly set out in the case of *Blackard, et al.* v. *State,* 217 Ark. 661, 232 S. W. 2d 977, to which reference is made for a fuller explanation. One primary distinction is that the purpose of punishment for criminal contempt is to preserve the dignity of the court, while the other is to enforce the rights of the third parties. No doubt the two purposes often merge as we think they do in this case. It appears from the wording of the court's order that the petitioner was punished because he disobeyed the court's mandate (that is, to preserve the dignity of the court) and also to insure cooperation of the petitioner in the future (that is, to enforce the rights of Mrs. Halcumb). It is not questioned that punishment for civil contempt will be upheld by this Court unless the order of the trial court is arbitrary or against the weight of the evidence. However, it is not necessary for us to hold the petitioner was found guilty of only civil contempt in order to sustain the trial court. We think the trial court should be sustained even if the petitioner were guilty of criminal contempt. In this situation the rule is clearly set out in the *Blackard* case, *supra,* where it is stated:

"On review by this Court in such proceedings by certiorari, we do not try the criminal contempt case *de novo,* despite any such language so intimating as contained in *Jones* v. *State,* 170 Ark. 863, 281 S. W. 663. Rather, we review the evidence just as we would in an appeal in any criminal case. The trial court in the first instance, in a criminal contempt proceeding must find the cited person guilty beyond a reasonable doubt. Then, on *certiorari* proceedings this Court reviews the record to determine whether the evidence, when given its full probative force, is sufficient to sustain the finding of the trial court. See *Stewart* v. *United States,* 236 Fed. 838; *Binkley* v. *United States,* 282 Fed. 244; *Davidson* v. *Wilson,* 286 Fed. 108; and *In re Oriel,* 23 Fed. 2d 409."

Weighing the testimony under the above rules, we find there is substantial evidence to support the order of the trial court.

We purposely refrain from again setting out the testimony which reeks with bitterness and family strife. It must be conceded that no witness testified he saw or heard petitioner influence Chris' decision not to accompany his mother on the occasion mentioned. There were, however, conceded circumstances from which the trial judge (who saw and heard the witnesses) could have reasonably concluded the petitioner did fail to cooperate in carrying out the court's order. One such circumstance is the tender age of Chris, indicating he would obey his father; one is the fact that the petitioner left on an extended trip with Chris a very short time after Mrs. Halcumb went by to pick him up; and, another is that the petitioner had prearranged to leave on an out of state trip at the exact time Chris was to leave with his mother.

We call attention to the fact that the suspension of a part of the petitioner's punishment cannot be revoked but is in effect a remission. See: *Stewart, et al.* v. *State,* 221 Ark. 496, 254 S. W. 2d 55.

Writ denied.