John SHIRES et al., Plaintiffs,

v.

The MAGNAVOX COMPANY et al., Defendants.

No. Civ-2-75-57.

United States District Court,
E. D. Tennessee,
Northeastern Division.

April 15, 1976.

See also, 74 F.R.D. 373.

Larry Weems, Jimmy Gray Cutshaw, H. R. Silvers and Jerry Laughlin, Greeneville, Tenn., for plaintiffs.

N. R. Coleman, Jr., Greeneville, Tenn.; Thomas H. Hafner, Fort Wayne, Ind.; Daniel B. Silver, and Henry J. Plog, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

The plaintiffs, electronic equipment retail dealers formerly selling Magnavox television and other products under franchise agreements with the corporate defendants seek a mandatory preliminary injunction against the defendants the Magnavox Company, the Magnavox Company of Tennessee, and the North American Phillips Corporation (Magnavox), to compel such defendants to reinstate such former agreements pending the outcome of this antitrust action. 15 U.S.C. §§ 1, 2. The Court conducted hearings on such application of February 13 and again on March 18, 1976.

■ It is a contention of the plaintiffs that such franchise agreements were terminated by the defendant Magnavox for the purpose of frustrating this litigation, by reducing their income from their business operations during the pendency of this action and rendering it more difficult for them to finance the same. This is only a part of the revelations of the evidence during the hearing on the latter-mentioned date. Rather, the Court finds therefrom that Magnavox undertook to intimidate and coerce the plaintiffs into settling and discontinuing this lawsuit, which constitutes an attack upon the integrity of the judicial system.

Among the witnesses who testified at such hearing was Mr. George Barker, a regional sales manager of Magnavox. Mr. Barker testified, *inter alia*, that, soon after he had been apprised of a settlement offer which his employer had proposed to the plaintiffs, including an offer to award the plaintiff Mr. John Shires a two-year, noncancellable franchise as a Magnavox dealer at Morristown, Tennessee, he called upon Mr. Shires in December, 1975 at the latter's retail outlet at Morristown, explained to him a newly-instituted program adopted by Magnavox for the sale by the plaintiffs of Magnavox merchandise to employees of Magnavox, and " * * * pointed out the termination clause * * *" in the aforementioned franchise agreement.[1] Mr.

---

1. Each of the franchise agreements aforementioned contained a provision that: " * * * Either you [the franchisee] or Magnavox may terminate this [a]greement by giving notice in writing to the other party. * * *"

Barker stated that he "* * * felt it was my duty as regional manager to call attention to the clause * * *"; although, he did not invite the attention of some 13 other dealers in the same geographical area, who were eligible to participate in the program to sell Magnavox merchandise to Magnavox employees. The witness gave as his reason for not directing the attention of such other dealers to such termination clause: "* * * they weren't in litigation with us. * * *" Mr. Barker communicated substantially the same ominous threat to the plaintiffs Mr. Cleveland Ricker and Ms. Geneva Shires in the same month.

■ Since the time Blackstone wrote his commentaries, courts have guarded jealously against any attempt to do any act to intimidate or to wilfully or unlawfully prevent a person from instituting or prosecuting a pending action in any court of record. This is deemed to be treating with disrespect the rules and processes of the court. *Snow v. Hawkes* (1922), 183 N.C. 365, 111 S.E. 621, 23 A.L.R. 183, 186, citing 41 Bl. Com. 286; Rapalje, Contempt, 27, note 1.

■ The prevention of the appearance of a litigant in court for the prosecution of a suit brought to enforce a right, by intimidation and threats, is considered such an obstruction of judicial procedure as renders absolutely worthless all process of the court, which has been instituted for the enforcement and protection of the rights and the redress and the prevention of wrongs of the litigants. *Turk v. State* (1916), 123 Ark. 341, 185 S.W. 472. Such is held to destroy the dignity of the Court and to bring the administration of justice into disrepute. *Idem.* The arm of the Court is long enough and strong enough to keep open and unobstructed the way to its door to all who must invoke its authority. *Idem.* Justice cannot be administered properly if litigants are intimidated; any effort to thwart justice or to interfere with its orderly administration cannot be countenanced; courts must be free; and it is the duty of the Court to protect litigants, so that the orderly administration of justice shall not be impeded. *Wilson v. Irwin* (1911), 144 Ky. 311, 138 S.W. 373.

Beyond the peradventure of a doubt, Mr. Barker's words and actions were intimidating and coercive of the plaintiffs Mr. Shires, Ms. Shires, and Mr. Ricker; he threatened in effect a cancellation of their respective franchise agreements with the manufacturer he represented unless they discontinued this litigation. The agreements with each such plaintiff were, in fact, terminated by Magnavox the following month. This Court cannot condone such adversary tactics.

Although Magnavox claims that it made no policy decision from the middle of 1975 through January of the following year to reduce the availability of its merchandise to the plaintiffs, and despite the fact that it was suggested on behalf of Magnavox that its employee Mr. Barker had a financial stake[2] in promoting a settlement on this litigation, in so far as the litigating plaintiffs are concerned, the intimidation and the coercion were just as strong as they would have been, had these not been included in the circumstances extant.

This Court has the power to blunt the effect of Magnavox' tactics through the use of its inherent equity power of injunction. In *Wilson v. Irwin, supra,* the highest court of the commonwealth of Kentucky recognized the power of a trial court to employ this extraordinary device. There a preliminary injunction had issued on the applica-

---

2. Mr. Barker was compensated for his services by salary and a commission on the sales Magnavox made in his region. This, of course, was an employment arrangement in which Magnavox participated voluntarily, and it cannot be heard to complain concerning the instant result of such arrangement with its agent.

As this Court observed in a different context, Magnavox contributed to this situation "* * by the manner in which they organized their business activities. * * *" *Davis Water & Waste Industries v. Jim Wilson, Inc.,* D.C.Tenn. (1974), 67 F.R.D. 509, 510[3], citing *Montalvo v. Tower Life Building,* C.A. 5th (1970), 426 F.2d 1135, 1147.

tion of Irwin restraining his neighbor, Wilson, from maintaining a dog kennel on his premises. During the pendency of that action, Wilson threatened to build a high fence between these neighbors' properties if he was required to move his dogs. Irwin persisted in his cause of action, and Wilson had a 20-foot-high fence erected. When final judgment was entered, making the preliminary injunction permanent, Wilson was enjoined mandatorily to remove the fence. Affirming, the appellate court stated, *inter alia*: " * * * It is insisted that Wilson had the right to build a fence on his own land, and build it as high as he pleased; but he had no right to interfere with the administration of justice, and he may be required to remove anything that was built to interfere with justice. * * * " Where a decree which might be entered by a federal district court sitting in Pennsylvania might thwart or render difficult an inquiry into frauds charged against a person adjudged a bankrupt by a federal district court sitting as a bankruptcy court in New Jersey, the district court in New Jersey was upheld in enjoining a litigant in an equity action in the federal district court in Pennsylvania from proceeding with his action there until the New Jersey action was concluded. *Steelman v. All Continent Corporation* (1937), 301 U.S. 278, 57 S.Ct. 705, 81 L.Ed. 1085 (headnote 1).

In an antitrust action, such as that *sub judice,* it was "assumed" by (now Chief) Circuit Judge Kaufman, of the Second Circuit, that " * * * in an appropriate case a court might restrain a defendant from attempting to coerce a plaintiff into discontinuing a lawsuit. This type of restraint would be akin to an exercise of the court's contempt power for the purpose of protecting the integrity of the judicial system. * * * " *House of Materials, Inc. v. Simplicity Patterns Co.,* C.A.2d (1962), 298 F.2d 867, 871[5]. (Now Senior) Circuit Judge Staley was not constrained to assume that such power exists the same year, in stating positively for the Third Circuit: " * * * Certainly, a court can act [to grant a preliminary injunction] where a party's conduct is calculated to frustrate litigation.

* * * " *Bergen Drug Company v. Parke, Davis & Company,* C.A.3d (1962), 307 F.2d 725, 728[4].

The act of Magnavox constituting a contempt, see 17 Am.Jur.2d 18, Contempt, § 13; Anno.—Contempt—Forcing Withdrawal, 23 A.L.R. 187–189, certainly it forms a basis for the ordering of the mandatory reinstatement of the parties' franchise agreements until the issues herein are finally determined. This is true, especially when there is such a strong connecting relationship between the intimidating and coercive threat of Magnavox' agent and the action Magnavox took in refusing to deal further with the terminated plaintiffs. The only reasonable inference from Magnavox' words and deeds is that they constituted acts which tended directly to interfere unlawfully with this pending action and to impair the remedy and defeat the rights of the plaintiffs. Cf. *Snow v. Hawkes, supra,* 183 N.C. 365, 111 S.E. 621, 23 A.L.R. at 186.

It is patent that the plaintiffs will be damaged irreparably if they are denied continued access to this Court to seek redress of the alleged wrongs of Magnavox; they have no adequate remedy at law to compel Magnavox to desist from such intimidative and coercive practices. On the other hand, Magnavox will not be the victim of a hardship if they are compelled to resume dealing with former dealers in their merchandise. Moreover, the plaintiffs have shown at least a reasonable likelihood of success on the merits of this lawsuit; although, after full consideration of all the issues to be presented, the facts may appear differently to the Court and the Court may arrive at a contrary conclusion. Cf. *Allis-Chalmers Mfg. Co. v. White Consolidated Indus., Inc.,* C.A.3d (1969), 414 F.2d 506, 510–511[1], certiorari denied (1970), 396 U.S. 1009, 90 S.Ct. 567, 24 L.Ed.2d 501. The point for emphasis in this situation is that this Court will not countenance the kind of attack shown by the evidence on the integrity of our judicial system. For such reason, security of $1 will be required of the plaintiffs. Were some of the usual indicia supporting the issuance of an injunction absent, in

order to vindicate the authority of this Court to keep its doors open to litigants for the redress of wrongs against them, the Court would have caused an injunction to issue.

The motion of the plaintiffs for a preliminary injunction hereby is GRANTED. Counsel for the plaintiffs and Magnavox will meet forthwith and undertake to agree on appropriate language for the injunction to be issued, consistently with the expressions in this memorandum and the requirements of Rule 65(a), Federal Rules of Civil Procedure. In the event counsel are unable to agree upon such proposed language, counsel for the plaintiffs will submit such a proposal within five days herefrom.

## ON MOTION TO SUBSTITUTE PARTIES

The plaintiffs moved for the substitution herein as parties defendant the personal representatives of the defendant Mr. Ted Ball, who died after the commencement of this private antitrust action. Rule 25(a), Federal Rules of Civil Procedure. The defendants concede that the plaintiffs' action herein survived against the estate of Mr. Ball, but only as to compensatory damages.

The Congress has provided that " * * * [a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor * * * and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15. There is a line of authority which indicates, but does not conclude, that treble damages may be recovered from the estate of a deceased defendant in an antitrust action. *Barnes Coal Corp. v. Retail Coal Merchants Ass'n.,* C.C. A.4th (1942), 128 F.2d 645, 649[8]; *Hicks v. Bekins Moving and Storage Co.,* C.C.A.9th (1937), 87 F.2d 583, 585[1]; *Moore v. Backus,* C.C.A.7th (1935), 78 F.2d 571, 573, 575–576[1], [6], [7], certiorari denied (1935), 296 U.S. 640, 56 S.Ct. 173, 80 L.Ed. 455.

■ The weight of persistent authority, however, is to the effect that, in a private action for treble damages under the Sherman Antitrust Act, 15 U.S.C. §§ 1, et seq., any recovery from the estate of a deceased defendant is limited to actual damages, and that treble damages may not be recovered in the event of a finding of liability. *Sullivan v. Associated Billposters and Distributors,* C.C.A.(2d) (1925), 6 F.2d 1000, 1012[10]; *Haskell v. Perkins,* D.C.N.J. (1928), 28 F.2d 222, 224[4]; *Rogers v. Douglas Tobacco Board of Trade,* C.A.5th (1957), 244 F.2d 471, 483[8]; *Vandervelde v. Put and Call Brokers and Dealers Ass'n.,* D.C. N.Y. (1972), 344 F.Supp. 118, 156–157[71]. As an award of statutory attorney's fees in such actions is punitive in nature, such cannot be assessed against the estate of a deceased defendant. *Haskell v. Perkins, supra.*

■ On the other hand, costs are recoverable by successful plaintiffs in a private antitrust action under the provisions of 28 U.S.C. § 1920 and Rule 54(d), Federal Rules of Civil Procedure. *Twentieth Century Fox Film Corporation v. Goldwyn,* C.A.9th (1964), 328 F.2d 190, 224[36], certiorari denied (1964), 379 U.S. 880, 85 S.Ct. 143, 13 L.Ed.2d 87; *Ott v. Speedwriting Publishing Company,* C.A.6th (1975), 518 F.2d 1143, 1149[1, 2].

■ Accordingly, Ms. Betty Jean Ball and Mr. Terry Ball, as coadministrators of the estate of the deceased defendant Mr. Ted Ball, hereby are SUBSTITUTED for such decedent as parties defendant herein, with any recovery against such substituted defendants to be limited to actual damages and costs.