Joe E. EDWARDS and Janice Sue EDWARDS *v.*
Honorable Paul JAMESON, Circuit Judge

84-125                                    679 S.W.2d 195

Supreme Court of Arkansas
Opinion delivered November 13, 1984

*Everett & Whitlock,* by: *John C. Everette,* for appellant.

*Steve Clark,* Att'y Gen., by: *Leslie M. Powell,* Asst. Att'y Gen., for appellee.

JOHN I. PURTLE, Justice. The petitioners were found to

be in contempt of court and were sentenced to fines of $50.00 and jail terms of 10 days. The case is before this court on a petition for writ of certiorari. Petitioners argue that the conduct for which they were found guilty was not contemptuous and that they were entitled to a jury trial. For reasons stated below we agree that the conduct under the particular circumstances of this case was not contemptuous.

On March 6, 1984, the petitioners were in the Circuit Court of Washington County as the result of a civil action pending against them. When the court had finished for the day the petitioners proceeded into the hallway outside the courtroom. Shortly thereafter the opposing counsel approached them in what he stated was a friendly manner. However, petitioners did not feel the same and called him "the lowest son of a bitch on the face of the earth." The attorney reentered the courtroom or a room immediately adjacent thereto. After two or three minutes inside the other room, the attorney proceeded downstairs. When he reached the second flight of stairs the petitioners were standing there and again each called him "a son of a bitch." A deputy sheriff intervened and told the petitioners to quit annoying the attorney and to leave the courthouse. The deputy escorted the attorney downstairs at which time at least one of the petitioners approached the attorney and called him "the sorriest son of a bitch in Washington County, Arkansas." Thereupon the deputy took petitioners into custody and took them back to the third floor of the courthouse and into the judge's chambers and informed the court of the petitioner's actions. Until that time the court had no knowledge of the events which had just occurred between petitioners and the attorney. The circuit judge advised petitioners that they were being charged with contempt of court for cursing the attorney. A hearing was scheduled for April 30, 1984. The court issued a written order informing the petitioners of the reasons for the hearing on the matter of contempt which had been initiated by the court. After the hearing on April 30, 1984, the court found both Mr. & Mrs. Edwards (petitioners) guilty of contempt of court and fined each one $50.00 and sentenced them to 10 days in jail. Mr. Edwards' jail term was suspended.

Although appellants argue four points for reversal we discuss only the point challenging the sufficency of the evidence. Inherent power to punish for contempt resides in all courts. This necessarily includes the right to inflict reasonable and appropriate puishment upon an offender against the authority and dignity of the court. Such power cannot be removed by the enactment of laws to the contrary. *Pace* v. *State,* 177 Ark. 512, 7 S.W.2d 29 (1928). However, when the legislature speaks on the subject it should not be ignored by the courts. Therefore we take into consideration Ark. Stat. Ann. § 34-901 (Repl. 1962) along with the other circumstances of this case. The cited statute purports to define criminal contempt in the state of Arkansas. All of the listed grounds for contempt of court indicate that the contemptuous acts relate to behavior committed during the trial or in the presence of the court and that such acts impair the respect and dignity of the court. Contempt as defined in this statute includes breach of the peace in matters occurring outside the courtroom which tend to interrupt its proceedings. Of course, willful disobedience of any lawful order of the court is considered contumacious conduct.

In the present case the petitioners' conduct occurred outside the courtroom and out of the presence or hearing of the court. The court had recessed for the day. There was no disturbance or impairment of any proceeding by the court. The court learned of the conduct after it was over. There was no evidence that petitioners attempted in any manner to interfere with the operation of the court. Actions which are designed to prevent appearance of a litigant or witness by intimidation or threats are obstructions of the judicial procedure which tend to bring the administration of justice into disrepute. *Turk and Wallen* v. *State,* 123 Ark. 341, 185 S.W. 472 (1916). In *Pace* v. *State,* supra, the husband of a witness inflicted a severe beating upon one of the attorneys during the noon recess. The attorney testified that he was on his way back to the courtroom to finish the lawsuit when he was attacked by Pace. This court found that under the circumstances in *Pace* the trial court was justified in finding that the assault and battery upon the attorney was in contemplation of an argument made during the pending trial and was calculated to obstruct the administration of justice

and degrade the authority of the court.

The matter of contempt of court was treated rather extensively in the case of *Freeman* v. *State*, 188 Ark. 1058, 69 S.W.2d 267 (1934). The court in *Freeman* reviewed prior cases and derived the following rules: (1) the power of punishment for contempt is independent of statute and inherent in and an immemorial incident of judicial power, which conclusions are to be reached by the court without a jury; (2) this inherent power is entrusted to the conscience of the court alone but should never be exercised except where the necessity is plain and unavoidable if the authority of the court is to continue; and (3) the court's contempt proceedings are to preserve the power and dignity of the court and to punish for disobedience of orders and to preserve and enforce the rights of the parties. Freeman was summoned before the court because of an editorial he published in his paper. The editorial had, in the opinion of the prosecuting attorney, made many derogatory statements which were considered disrespectful to the court. The editorial was critical of the enforcement of an ordinance and statute against keeping marble machines after the city and state sold licenses to the owners of the machines. Speaking of the judges who had initiated the criminal action against the owners of the machines, the editorial stated, "he must see how unfair it is to force these operators to pay a State and city license, then confiscate their money as well as machines. . . " The prosecuting attorney read the editorial and believed it was a reflection upon the court. He immediately filed a petition requesting the publisher and editor be cited for contempt of court. The editor and publisher appeared on the date for the hearing and disclaimed any intent to reflect upon or influence the court or its officers. The trial court found them guilty of contempt because the editorial was of a character "having a tendency to influence the action of the tribunal before which the case is pending." This court ruled that in view of petitioners' disclaimers of intent to reflect upon the court or its officers, the judgment of the trial court was quashed. In *Dennison* v. *Mobley, Chancellor*, 257 Ark. 216, 515 S.W.2d 215 (1974) we stated: "on the other hand, the primary reason for punishment for criminal contempt is the necessity for maintaining the dignity, integrity and au-

·thority of, and respect toward, courts and the deterrent effect on others is just as important as the punishment of an offender." We do not find that we have ever held that mere spoken words to a lawyer out of the presence of the court, which make no threat or attempt to interfere in any proceedings, amount to criminal contempt. Although the words in the present case may have rendered petitioners responsible for some other charge or suit they did not amount to criminal contempt. We do not find any substantial evidence that petitioners had any intent to or did commit contumacious acts. We quash the contempt citations because the undisputed facts reveal that only words were spoken to the attorney at a time and place where they did not in any manner reflect upon the integrity of the court or interfere to any degree with its proceedings. Petitioners did not even by innuendo attempt to influence the outcome of the proceedings or intimidate any witness or officer of the court. By quashing this judgment we do not wish to in any manner imply that judges do not have the inherent power and duty to preside over their respective courts and issue any orders or citations to protect the administration of justice and uphold the dignity and respect of the court.

Writ granted and judgment quashed.

HICKMAN, DUDLEY AND HAYS, JJ., dissent.

STEELE HAYS, Justice, dissenting. The majority opinion recognizes the inherent power of courts to punish for contempt, but limits that power to the courtroom. With that I disagree. I don't suggest it extends to any great extent in time or distance from the courtroom, and this case does not require that we fix the outer boundaries. But this conduct occurred immediately after a hearing, immediately adjacent to the courtroom, and was prompted by what had just occurred in the courtroom and because of that it was a challenge to the legal process itself, not merely to the dignity of the court. Nor was there anything about this lawyer's demeanor that warranted petitioners' behavior, other than his representation of his client.

I take no particular offense to the language used,

though it was deliberately provocative, as both lawyers and judges ought to acquire skins thick enough to withstand verbal abuse, but when the conduct has implications of physical violence, as I believe this did, the court's authority to protect litigants, jurors, witnesses, even lawyers, from intimidation, immediate and direct, ought to at least include the near proximity of the courtroom.

HICKMAN, J., and DUDLEY, J., join in this dissent.