Gloria J. JOLLY *v.* Sandy E. JOLLY

86-68 719 S.W.2d 430

Supreme Court of Arkansas
Opinion delivered November 17, 1986

*William J. Velek*, for appellant.

*Ronald L. Burton*, for appellee.

DAVID NEWBERN, Justice. The issue in this appeal is whether the court erred in holding the appellant, Gloria Jolly, in contempt and in sentencing her to thirty days imprisonment with twenty-six days suspended. We hold that the contempt citation was erroneous because it was not justified by the conduct of the appellant, and we note that a suspension of a sentence for criminal contempt amounts to a remission.

The appellant and the appellee, Sandy Jolly, were formerly married to each other. Since their divorce in 1982, they have been in court numerous times arguing over property division and support orders. Apparently the home and land on which the appellant and the two children of the former marriage live is adjacent to land on which the appellee operates a dairy farm. Because of their inability to agree on a boundary line, some of the land between the appellant's place and the dairy farm was put in a trust for the children.

The appellee constructed a fence which the appellant contended would, if completed, enclose with the appellee's land not only the land which had been placed in the trust but some land which belonged to her. The fence was not completed when the

appellee sent word to the appellant that he intended to spread urea fertilizer on his side of the fence.

Prior to learning of the intended fertilization of the land, the appellant had brought an action in the circuit court as next friend of her children, later joined by her as a party in her own right, contending that the appellee had unlawfully cut trees on the trust land and on her land. At a hearing in that action, the appellant's counsel orally moved the court to enjoin the appellee from spreading the fertilizer on the land in question. The appellant testified that urea fertilizer, which was used, was "totally poisonous" to horses, and the incomplete fence would not keep the children's nine horses from going on the fertilized pasture. The appellee testified that he had already spread the fertilizer. The court ordered a temporary injunction to prevent any further fertilization and set a hearing at which expert testimony could be heard to determine the toxicity of the fertilizer. The court stated that if it were found that the fertilizer was harmful to the horses he would hold the appellee in contempt, and if it were found that the fertilizer was not harmful he would hold the appellant in contempt.

At the subsequent hearing, a court appointed expert, a veterinarian, testified that the fertilizer could be toxic to horses if ingested before being dissolved by rain or other moisture. He further testified that the samples he had taken at random on the land showed no toxic amounts of the fertilizer remained, and he did not see any undissolved clumps of it on the ground. He also said that any ammonia nitrate fertilizer could cause toxicity, and that urea was in common usage for pasture land in the area. He testified the same protective measures, that is, keeping the horses separated from the freshly applied fertilizer, should be taken no matter what sort of fertilizer was used.

The appellant testified she had in fact removed the horses when she learned the fertilizer was to be applied to the trust land and to land of which she had been in possession and claimed ownership, that she had heard urea was harmful to horses, and that she did not wish to take a chance that it would prove harmful.

The court found that the appellant was "using" the court in a contemptuous manner, that she was guilty of contempt. The sentence was thirty days in jail with twenty-six days suspended.

## 1. Criminal contempt

The contumacious conduct found by the court must have been either in the appellant's oral motion to enjoin the spreading of fertilizer on trust land and land she thought was hers or in testifying that urea was "totally poisonous" to horses based upon nothing more than something she had heard.

### a. The motion

The court was obviously frustrated by the duration of the bickering between the parties. In announcing his decision he reviewed the 1982 divorce, a motion to intervene filed by the children's maternal grandmother, a motion seeking sanctions for "non-payment," a petition by the appellee claiming he had been threatened with a pistol, and another petition by the maternal grandmother, all of which occurred in 1983. The court apparently regarded the motion which he determined not to have been made in good faith as the capstone of a course of conduct calculated to "use" the court for a purpose for which the court was "not designed."

In *Clark* v. *State*, 287 Ark. 221, 697 S.W.2d 895 (1985), we dealt with a trial court's finding that a motion for recusal of the trial judge was contumacious. The motion had apparently accused the judge of bribing a witness, intimidating a witness, making a false statement, and conspiring against the accused in a criminal case. We held the trial judge should recuse in the case, and we said such a motion could possibly be the basis of a contempt citation, leaving the matter open to decision by the substituted trial judge. For the proposition that the motion could serve as the basis of a contempt citation we cited *Ex Parte Stroud*, 167 Ark. 331, 268 S.W. 13 (1925). In that case a criminal defendant had been held in contempt for causing 167 witnesses to be subpoenaed. Many of the witnesses were never sworn or called to testify. In quashing the contempt judgment we made it clear that an abuse of the process of the court is not a basis for a contempt citation. Quoting *Johnson* v. *State*, 87 Ark. 45 (1908), we said:

> The mere filing and presentation of a motion or repeated motions which are thought to be for the purpose of vexation or delay, do not constitute contempt of court. The court

may, in the exercise of its inherent powers, strike them from the files because they are not presented to subserve the ends of justice, and are merely for vexation or delay, but, unless they are presented in a contemptuous or disrespectful manner, or unless they contain matter which of itself constitutes contempt, the court cannot treat them as contemptuous merely because they are thought to be for vexation or delay. Take, for instance, motions for continuance or change of venue. The court may well treat repeated motions of this kind as dilatory in their purpose, and refuse to hear them; but, if they are presented in a respectful manner, it shows no contempt of court, and cannot be so treated, unless they involve some violation of the court's order, so as to amount to an obstruction of the administration of justice. [167 Ark. at 333-334; 268 S.W. at 14]

We find no evidence here to support a determination that the appellant's motion showed any disrespect for the court or that it constituted a wilful disruption. *See Jones* v. *Jones*, 287 Ark. 72, 696 S.W.2d 727 (1985); *Widmer* v. *State*, 243 Ark. 952, 422 S.W.2d 881 (1968).

### b. False testimony

Although not by this court, as far as we know, it has been held that the making of a false statement may constitute contumacious conduct if it obstructs the judicial process. *In re Michael*, 326 U.S. 222 (1945); *Ex Parte Hudgings*, 249 U.S. 378 (1919). It has been said that the basis for such a determination is the similarity between giving false testimony and refusal to testify altogether. *See Steingut* v. *Imrie*, 270 App. Div. 34, 58 N.Y.S. 2d 775 (1945). A criminal contempt citation must be based on evidence showing guilt beyond a reasonable doubt. *Howell* v. *State*, 257 Ark. 134, 514 S.W.2d 723 (1974). When the question is whether false testimony is contumacious, a contempt citation should not follow from proof showing the party in question testified falsely because of misunderstanding as opposed to proof that she lied wilfully. *Silver* v. *State*, 117 So. 2d 509 (Fla. App. 1960). *See also Steingut* v. *Imrie*, *supra*, and the published abstract of *People* v. *Cumby*, 348 Ill. App. 223, 108 N.E.2d 736 (1952).

In *In Re Cantor*, 215 F. 61 (2nd Cir. 1914), there

appears the following which is part of the district court's opinion in the case (Hand, J.):

> In criminal contempts the accused has all the substantive benefits of one indicted . . . among them that of the degree of proof and . . . I certainly cannot say on this record that beyond a reasonable doubt this man was deliberately blocking the course of the proceeding by swearing to what he knew was false. The power undoubtedly exists, but it ought to be used very circumspectly. By that, I do not mean that it ought to be surrounded with absurd technicality which will destroy its value, but I do mean that all reasonable explanations should be made. A judge ought not to commit a man for contempt for perjury except in so plain a case as makes further attempt to examine the witness a farce, so obviously that no observer, who was present, could doubt that the witness was obviously trifling with the proceeding. He ought not to judge upon the balance of proof introduced to contradict the witness and so turn the examination into a trial of perjury, for this trenches on the criminal law itself. And, while the line cannot be abstractly stated with success, it can be so administered, if the judges will remember the purpose which it answers, and loyally accept the limitations which the defendant's right to a jury trial throws upon them. [215 F. at 63.]

*See also Johnson* v. *Austin*, 76 App. Div. 312, 78 N.Y.S. 501 (1902); Annot., 89 A.L.R. 2d 1258 (1963).

## 2. *The suspended sentence*

 The parties have raised no issue about the purported suspension of a portion of the sentence, and our reversal of the conviction makes the point moot; however, we point out, as we have consistently done in the past, that a suspension of a contempt citation sentence amounts to a remission. *Higgins* v. *Merritt*, 269 Ark. 79, 598 S.W.2d 418 (1980); *Johnson* v. *Johnson*, 243 Ark. 656, 421 S.W.2d 605 (1967); *Songer* v. *State*, 236 Ark. 20, 364 S.W.2d 155 (1963).

### 3. Conclusion

We hold that the evidence was not sufficient to sustain a citation for contempt as to either the motion made by the appellant or her testimony. Although this case was not difficult to resolve, the review of our contempt cases it entailed makes it clear to us that our general assembly might well consider the adoption of a comprehensive statute on civil and criminal contempt proceedings as we suggested in *Clark* v. *State, supra. See* H. Brill, *A Proposed Arkansas Contempt Statute*, 1984 Ark. L. Notes 29.