Lloyd D. SMITH *v.* Donna K. SMITH

CA 88-339 770 S.W.2d 205

Court of Appeals of Arkansas
Division II
Opinion delivered May 17, 1989

58

*Villines & Lacy,* by: *M. Watson Villines II,* for appellant.

*Russell L. "Jack" Roberts,* for appellee.

JUDITH ROGERS, Judge. This appeal arises from an order of the Faulkner County Chancery Court involving a custody dispute between the appellant, Lloyd David Smith, and the appellee, Donna Kaye Smith. Appellant argues that the chancellor erred in refusing to change custody of the parties' minor children, in finding him in contempt for failing to return the children after visitation, and in awarding attorney's fees to appellee's attorney. We disagree and affirm as modified.

The parties were divorced on May 7, 1986, and the appellee was awarded legal custody of the two children, Lloyd John and Jeremy. The appellant was awarded visitation every other weekend, one half of the holidays, and two months in the summer.

The present matter was commenced on March 27, 1987, by the Appellant's Petition for Change of Custody. On September 14, 1987, appellee filed three separate petitions: Petition for Citation alleging that appellant's petition for change of custody was frivolous; Petition for Increase in Child Support; and a Petition for Contempt alleging appellant failed to pay child support. The next petition, Amended Petition for Change of Custody and Petition for Temporary Relief, was filed by appellant on December 28, 1987. Appellee then filed a petition citing appellant for contempt for refusing to return the minor children after visitation.

The hearing on this matter was held on January 13, 1988, but was continued until March 22, 1988. The chancellor found that appellant had failed to prove the needed elements for a change of custody and denied his petition. The chancellor also found that appellant was in arrears in his child support payments in the amount of $620. The court also increased appellant's child support payments to seventy-two dollars per week from sixty-two dollars. The court found that appellant failed to return the children after visitation and found him in contempt. Appellant was also ordered to pay attorney's fees.

■■ The first issue on appeal is whether the chancellor erred in denying appellant's petition for change of custody. The appellant had the burden of proof to show changes in circumstances warranting a change of custody. *Norman* v. *Norman*, 268 Ark. 842, 596 S.W.2d 361 (Ark. App. 1980). In custody matters, the chancellor's finding of fact will not be disturbed unless clearly erroneous. *White* v. *Taylor*, 19 Ark. App. 104, 717 S.W.2d 497 (1986).

■ Appellant argues that the children, Lloyd John, age thirteen, and Jeremy, age eleven, have a better relationship with him and have indicated a preference to live with him in Conway. Appellant argues that the preference of the children can be "significant" in custody cases, citing *DeCroo* v. *DeCroo*, 266 Ark. 275, 583 S.W.2d 80 (1979). One of the factors considered by the

supreme court in that case, was the testimony of the parties' thirteen year old daughter that she was closer to her mother and wanted to be with her. The court stated that "[s]uch an expression of preference is not entirely without weight." *DeCroo*, 266 Ark. at 277, 583 S.W.2d at 82. The primary consideration in awarding the custody of children is the welfare and best interest of the children involved. Other considerations are secondary. *Digby* v. *Digby*, 263 Ark. 813, 567 S.W.2d 290 (1978).

Appellant basically argues that appellee has "no time for the boys at this time and is leaving them to basically fend for themselves." Appellant contends that appellee does not ensure the boys have proper meals and clothing, does not encourage them in sports, and leaves them alone or with a young babysitter. Appellant also expresses concern over the suitability of appellee's present husband, Jack Jackson, noting that he is a recovering alcoholic and suggesting that he is an unstable individual.

As appellee notes, there was no testimony that the children have experienced any behavioral, disciplinary, or academic problems while in appellee's custody. In response to the testimony by appellant, appellee stated that she had never left the boys alone all night. She also testified that she provides them with clothing, but is unable to afford the popular brands which the appellant purchases for them. Appellee also maintained that the children are provided with proper meals. As to the reference made to appellee's husband, he testified that he had been sober for seven years.

■■ The chancellor heard lengthy and often conflicting testimony in this matter. Since the question of preponderance of the evidence turns largely on the credibility of the witnesses, the appellate court defers to the superior position of the chancellor, especially in those cases involving child custody. *Rush* v. *Wallace*, 23 Ark. App. 61, 742 S.W.2d 952 (1988); Ark. R. Civ. P. 52(a). We cannot say that the chancellor's decision that appellant failed to prove changes in circumstances warranting a change of custody was clearly erroneous.

The second issue on appeal is whether the chancellor erred in finding appellant in contempt for failing to return the children after visitation. The chancellor found appellant had wrongfully kept the children for eighty-four days and treated each day as a

separate offense, and sentenced appellant to ten days for each offense for a total of 840 days. The chancellor suspended 756 days of the sentence, leaving appellant eighty-four days to serve in jail.

██ It is well settled that suspension of a contempt citation amounts to a remission. *Jolly* v. *Jolly*, 290 Ark. 352, 719 S.W.2d 430 (1986); *Higgins* v. *Merritt*, 269 Ark. 79, 598 S.W.2d 418 (1980). Appellant was sentenced to an unconditional penalty, a definite term of eighty-four days in jail, which constitutes criminal contempt. The character of the relief, rather than the trial court's characterization of the substantive proceeding, becomes the critical factor in determining the nature of the proceeding for due process purposes. *Fitzhugh* v. *Fitzhugh*, 296 Ark. 137, 752 S.W.2d 275 (1988). An unconditional penalty is criminal in nature because it is "solely and exclusively punitive in character." *Id. See also, Hicks ex rel. Feiock* v. *Feiock,* 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988).

█ In *Rowell* v. *State,* 278 Ark. 217, 218, 644 S.W.2d 596, 597 (1983), the supreme court stated:

> At the outset we observe that although the trial judge must be convinced beyond a reasonable doubt that a criminal contempt was committed, that is not the standard of review in this court. We view the record in the light most favorable to the trial court's decision and formerly sustained that decision if supported by substantial evidence. *Dennison* v. *Mobley,* 257 Ark. 216, 221, 515 S.W.2d 215 (1974); *Songer* v. *State,* 236 Ark. 20, 364 S.W.2d 155 (1963). Now we sustain the decision unless it is clearly erroneous. ARCP Rule 52.

The cases decided after it, however, have held that the appellate court affirms a judgment finding criminal contempt unless there is no substantial evidentiary support. *Warren* v. *Robinson,* 288 Ark. 249, 252, 704 S.W.2d 614 (1986). *See also, Yarborough* v. *Yarborough,* 295 Ark. 211, 748 S.W.2d 123 (1988), which also held the trial judge's decision should be affirmed if supported by substantial evidence. Therefore, the standard of review in a criminal contempt case is the same as in any criminal case. In criminal cases, whether tried by judge or jury, we will affirm if there is substantial evidence to support the finding of the trier of fact. *Harris* v. *State,* 15 Ark. App. 58, 689 S.W.2d 353 (1985);

*see also, Milburn* v. *State*, 262 Ark. 267, 555 S.W.2d 946 (1977).

■ Appellant appears to challenge the sufficiency of the evidence by arguing that the sentence was excessive "particularly when there was no indication that appellant had intended any ill will or disrespect to the Court." The purpose of a criminal contempt proceeding is that it is brought to preserve the power and vindicate the dignity of the court and to punish for disobedience of its order. *Fitzhugh, supra.* Appellee was given legal custody of the children by the decree, yet appellant did not return them after visitation. Appellee testified that appellant phoned her after she unsuccessfully tried to pick the children up and that he stated that he was keeping them. Appellee further testified that appellant did not in fact return the children until three weeks prior to the second hearing. The chancellor found that appellant willfully violated his orders by keeping the children. We cannot say that there was no substantial evidence to support that finding.

■ Appellant argues that the trial court erred in finding him in contempt because the petition which was filed January 12, 1988, was vague, and he could not defend against it because it was not served as required by law. The Due Process Clause, as applied to criminal proceedings, requires that an alleged contemnor be notified that a charge of contempt is pending against him and be informed of the specific nature of that charge. *Fitzhugh, supra.* Although the certificate of service indicated the petition had been sent to appellant's attorney on December 28, 1987, appellee's attorney hand delivered a copy of the petition to him on January 13, 1988, the day of the first hearing.

■ A defense of insufficiency of process is waived if not asserted in the responsive pleading or by motion. *See, Searcy Steel Co.* v. *Merchantile Bank of Jonesboro*, 19 Ark. App. 220, 719 S.W.2d 277 (1986); Ark. R. Civ. P., Rule 12(h)(1). Appellant's attorney received the petition the morning of the January 13, 1988, hearing, and did not object to service until after he had called three witnesses at the hearing. After appellant's objection, the court and attorneys retired to chambers, and the case was continued until March 22, 1988. At no time during the interim did appellant raise the issue of the sufficiency of service again before the hearing resumed. Thus appellant waived any defect or irregularity in the service of process. Appellant proceeded with

actual notice of the pending contempt charges and had over two months to prepare for the hearing. Appellant thus received notice comporting with the requirements of due process.

 Appellant next argues that he was entitled to a jury to decide his criminal contempt case since he was sentenced to 840 days in jail. We disagree. As we have already noted, it is well settled that suspension of a contempt amounts to a remission. *Jolly, supra.* Therefore, we need only consider the eighty-four days to which appellant was actually sentenced. Petty contempt, like other petty criminal offenses may be tried without a jury and contempt of court is a petty offense when the penalty actually imposed does not exceed six months or a longer penalty has not been expressly authorized by statute. *Taylor* v. *Hayes*, 418 U.S. 488 (1974).

[██ Although appellant does not raise the issue of whether the chancellor had the authority to sentence him to eighty-four days of incarceration, the question arose during our conference and we note that the chancellor was acting pursuant to the inherent power of the court. It has long been recognized that courts have the inherent power to punish contempt in disobedience of their process. *Spight* v. *State*, 155 Ark. 26, 243 S.W. 860 (1922). The supreme court discussed the development of the law of contempts in *Edwards* v. *Jameson*, 284 Ark. 60, 63, 679 S.W.2d 195, 196 (1984), and reviewed prior decisions.

> The matter of contempt of court was treated rather extensively in the case of *Freeman* v. *State*, 188 Ark. 1058, 69 S.W.2d 267 (1934). The court in *Freeman* reviewed prior cases and derived the following rules: (1) the power of punishment for contempt is independent of statute and inherent in and an immemorial incident of judicial power, which conclusions are to be reached by the court without a jury; (2) this inherent power is entrusted to the conscience of the court alone but should never be exercised except where the necessity is plain and unavoidable if the authority of the court is to continue; and (3) the court's contempt proceedings are to preserve the power and dignity of the court and to punish for disobedience of orders and to preserve and enforce the rights of the parties.

*See also, Pace* v. *State*, 177 Ark. 512, 7 S.W.2d 29 (1928).

Article 7, § 26 of the Arkansas Constitution provides, "The General Assembly shall have power to regulate by law the punishments of contempts not committed in the presence or hearing of the courts, or in disobedience of process." The legislature enacted Ark. Code Ann. § 16-10-108(a)(3) (1987), which provides that courts of record shall have the power to punish "willful disobedience of any process or order lawfully issued or made by it," and subsection (b)(1) provides for a maximum punishment of ten days imprisonment, or a maximum fine of fifty dollars, or both. The Arkansas Supreme Court has interpreted the foregoing statutory provisions and has held they are not a limitation on the power of the court to inflict punishment for disobedience of process. *Yarborough, supra.*

An order of a court is process, and while the constitution delegated authority to the legislature to regulate punishment for contempt, this delegation has been construed by the supreme court to be in addition to and not in derogation of the inherent power of the court. Pursuant to its inherent power, the court may also punish for contempt, which includes disobedience of process. The term "process" has been defined broadly by our statutes and caselaw. Ark. Code Ann. § 16-55-102(a)(16) (1987) provides that "[p]rocess means a writ or summons issued in the course of judicial proceedings." Subsection (a)(23) of that provision defines "writ" as meaning an order or precept in writing, issued by a court, clerk or judicial officer. The supreme court has stated that "[p]rocess in the sense of the statutes is a comprehensive term which includes all writs, rules, orders, executions, warrants or mandates issued during the progress of an action." *Henderson* v. *Dudley,* 264 Ark. 697, 709, 574 S.W.2d 658, 665 (1978).

In finding appellant in contempt, the chancellor was acting pursuant to the inherent power of the court. The supreme court has stated that inherent power to punish for contempt resides in all courts. This necessarily includes the right to inflict reasonable and appropriate punishment upon an offender against the authority and dignity of the court. Such power cannot be removed by enactment of laws to the contrary. *Edwards,* 284 Ark. 60, 62, 679 S.W.2d 195, 196 (1984). As noted earlier, the nature of the punishment imposed rather than the nomenclature used governs the determination of whether the

contempt is civil or criminal, and in turn the protections to be afforded a contemner in the respective proceedings. A chancery court is empowered to punish for criminal contempt, but the court must provide the appropriate protections comporting with the standards of due process, as in other criminal proceedings.

Appellant argues that the chancellor miscalculated the number of days that he had the children, contending that he only had them sixty-four days rather than eighty-four days. Upon review, we find that the chancellor did make an error in calculating the number of days and modify appellant's sentence to comport with the chancellor's findings and rationale in finding each day to be a separate offense. It is undisputed that appellant retained the children on December 27, 1987. Appellee testified that appellant did not return them until three weeks prior to the March 22, 1988, hearing, which is approximately sixty-four days from the time appellant kept them. We have the power to modify punishment imposed for contempt and affirm the chancellor's decision with the modification that appellant's sentence be reduced to sixty-four days rather than eighty-four days to comport with his intention that the sentence actually served be one day for each ten day sentence assessed. *See, Page* v. *State,* 266 Ark. 398, 83 S.W.2d 70 (1979).

Finally, appellant argues that the chancellor erred in awarding attorney's fees to the appellee's attorney. The chancellor is in a much better position to evaluate the services of counsel than an appellate court, and unless a clear abuse of discretion is evident, the chancellor's action in fixing attorney's fees will not be disturbed on appeal. *Warren* v. *Warren,* 270 Ark. 163, 603 S.W.2d 472 (1980).

The court awarded appellee's attorney $1,137 in attorney's fees for this matter. Appellant argues that it was excessive because an insufficient record was made as to the value and amount of the services. We disagree. Appellee's attorney stated that his fees had totalled $650 prior to the hearing, and the chancellor found that he had spent six and a half hours in the matter the day of the hearing. The chancellor appeared to award the attorney an additional fee of less than $500 for the six and one-half hours spent that day in the hearing. The chancellor stated the amount of $1,137.50 would be a reasonable fee; the written order

stated the amount to be $1,137. We cannot say the chancellor abused his discretion in determining this to be a reasonable fee.

■ Appellant also argues that the attorney's fees were impermissibly based upon the criminal contempt. The instant case was commenced by appellant's petition to change custody and resolved several disputes including custody, child support, and the contempt citations. The court did not state and we cannot determine from the record before us that it was awarding attorney's fees based upon the contempt. We cannot say that the chancellor abused his discretion in determining and awarding attorney's fees in this matter.

AFFIRMED as MODIFIED.

MAYFIELD, J., agrees.

JENNINGS, J., concurs.

JOHN E. JENNINGS, Judge, concurring. I concur but would prefer not to discuss the issue of the chancellor's authority because, as the majority opinion notes, the issue is not raised.